IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PRUCO SECURITIES, LLC, | ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 08- |
| v. | ) ) ) | |
| BARRY A. HOSTO, | ) | |
| Defendant. | ) ) ) | |

### AFFIDAVIT OF SHERIDA PYLE

| | |
|---|---|
| STATE OF MISSOURI | ) |
| | ) |
| COUNTY OF ST. LOUIS | ) |

SHERIDA PYLE, under penalty of perjury, deposes and says:

1.      I am the Operations and Control Manager for the Greater St. Louis Agency of plaintiff The Prudential Insurance Company of America ("Prudential Insurance"). I have been affiliated with Prudential Insurance and plaintiff Pruco Securities, LLC ("Pruco") for almost thirty-four years. I submit this Affidavit in support of Plaintiffs' Application for a Temporary Restraining Order and Motion for Preliminary Injunction. (Prudential Insurance and Pruco, hereinafter, are collectively referred to as "Prudential" or the "Company"). I have personal knowledge of the facts set forth below, except as to those stated on information and belief, which I believe to be true.

## Preliminary Statement

2.      Defendant Barry A. Hosto ("Defendant" or "Hosto") commenced employment with Prudential in January of 1991 as an agent.  Although affiliated with the Greater St. Louis office, the Defendant maintained a private office in Edwardsville, Illinois.

3.      In the course of his association with Prudential, Defendant entered into at least two agreements with Prudential that contained covenants in which Defendant expressly agreed that (i) Prudential documents and information are confidential and proprietary, the property of Prudential, and must be returned to Prudential upon the termination of Defendant's employment with Prudential and (ii) that for two years following the termination of his association with Prudential, he would not solicit, directly or indirectly, Prudential customers he serviced or whose names he knew because of his Prudential affiliation nor would he induce or cause Prudential customers to cancel or to replace Prudential policies.

4.      Prudential Insurance is a financial services firm.  Through Pruco, Prudential Insurance provides financial planning, securities brokerage and other securities services to its clients.  Prudential Insurance Agency, LLC ("PIA") services the personal lines property and casualty insurance products of Prudential Property and Casualty Insurance Company of New Jersey ("PRUPAC-NJ"), which formerly was an affiliate of Prudential Insurance.  In 2003, Prudential Financial, Inc., Prudential Insurance's parent corporation, sold a portion of its auto and homeowners' insurance businesses to Liberty Mutual Insurance Group ("Liberty

Mutual"). In connection with such sale, Prudential Insurance Brokerage, Incorporated ("PIBI") was appointed as the exclusive agent for Liberty Mutual and its affiliates to service property and casualty insurance products previously sold by Prudential. Prudential Insurance and PIBI also retained certain rights with respect to relationships with customers and commissions related to any product sold by Prudential agents. Such retained rights include the right to access and use confidential and proprietary business and customer trade secret information sold by Prudential. Additionally, Prudential Insurance and PIBI agreed to safeguard this confidential information and to pursue legal remedies against former Prudential agents – such as Defendant – who solicit or cause policyholders to replace a property and casualty insurance product or who refused to return confidential and proprietary information to Prudential Insurance and PIBI. In 2006, PIBI was merged into PIA and ceased to exist. PIA succeeded to PIBI's rights and obligations.

5.     Nonetheless, in direct violation of his contractual agreements, Defendant (i) has solicited Prudential customers and replaced their policies with competitor products and (ii) has misappropriated Prudential client records and files.

6.     Indeed, to this day, Defendant has failed to return all of them, notwithstanding numerous demands to do so and despite an affidavit he signed in September of 2007, in which he represented, under penalty of perjury, he did not possess any. In April of 2008, Defendant's last employer Broker Dealer Financial Services Corp. ("Broker Dealer Financial"), during an unannounced inspection, subsequently found many of the Prudential files Defendant purloined in Defendant's

office and returned them to Prudential.   However, upon information and belief,
Defendant still possesses still more Prudential files.

7.     Defendant, moreover, has contravened his contractual
agreements by using the confidential and proprietary Prudential client and business
information he absconded with to solicit Prudential customers to cancel their
policies and/or to induce them to replace Prudential policies with policies written by
Prudential competitors.   Accordingly, Defendant has directly violated his clear and
express covenants to the Company, in addition to his duty of loyalty and his
common law obligations to Prudential.   Defendant's misconduct has caused
Prudential irreparable injury, as detailed below, requiring the commencement of this
action seeking interim injunctive relief pending arbitration between the parties.

<u>Background Facts</u>

8.     Prudential Insurance is a financial services firm.   Pruco, a
wholly-owned subsidiary of Prudential Insurance, is a national broker-dealer and a
member of the National Association of Securities Dealers, Inc. (the "NASD"), now
known as FINRA.   Through Pruco, Prudential Insurance provides financial planning,
securities brokerage and other securities services to its clients.

9.     Defendant maintained a securities license with the NASD.
Accordingly, he is required to arbitrate this employment-related dispute with
Prudential through FINRA Dispute Resolution, Inc.   Prudential contemporaneously is
initiating an arbitration with FINRA against Defendant.   Pursuant to Rule 13804 of
the FINRA Code of Arbitration Procedure, if a party seeks temporary injunctive

4

relief in connection with an arbitrable dispute, it must seek such relief from a court, rather than the NASD.[1] Accordingly, Prudential has initiated the instant action for an order in aid of arbitration.

<u>Defendant's Agreements With Prudential</u>

10. Defendant was associated with Prudential from 1991 through April 3, 2007. On April 2, 2001 Defendant became a Statutory Agent for Prudential. In connection therewith, he signed a Statutory Agent Agreement, dated March 9, 2001, a true and correct copy of which is attached hereto as <u>Exhibit B</u> (the "Statutory Agent Agreement").[2] Further, Defendant signed an Authorized Broker Agreement, with an effective date of October 31, 2003 (the "Liberty Authorized Agent Agreement"), with Prudential and Prudential Insurance Brokerage, Incorporated ("PIBI"), a true and correct copy of which is attached hereto as <u>Exhibit C</u> (together "the Agent Agreements").

11. The Statutory Agent Agreement that Defendant signed with Prudential explicitly provides that the client information that he obtained in the course of his association with Prudential constitutes Prudential proprietary and confidential information. Section 6(b) of the Statutory Agent Agreement confirms that Defendant is only to use Prudential's proprietary and confidential information in connection with his activities as a Prudential agent:

> All Confidential and Proprietary Information, whether provided to you by Prudential or by any customer, client,

---

[1] A true and correct copy of Rule 13804 is attached hereto as <u>Exhibit A</u>.
[2] Defendant dated the Statutory Agent Agreement "3-9-01" but probably executed it on April 9, 2001, one week after he entered it.

5

customer lead or prospect, or from any other source, or prepared by you while associated with the Company in any capacity, is entrusted to you as an agent and representative of Prudential. You acknowledge that this Confidential and Proprietary Information is unique, extremely valuable to Prudential and is developed and acquired by great expenditures of time, effort and cost. You agree that this Confidential and Proprietary Information shall be treated by you at all times as confidential and as the proprietary property of Prudential. You agree not to divulge or disclose this Confidential and Proprietary Information to any third-party, either during your association with the Company or at any time thereafter, except in the performance of your duties for the Company. (Emphasis added.) Exhibit B

Section 3(l) of the Liberty Authorized Agent Agreement is similar to Section 6(c) of the Statutory Agent Agreement that is set forth above and states that:

You agree to: . . . Hold in confidence Liberty's Confidential Information and not directly or indirectly report, publish, distribute, copy, disclose, or otherwise disseminate Liberty's Confidential Information, or any portion thereof, to any third party, for any purpose, except as expressly authorized in writing by Liberty. The provisions of Section 3(l) shall survive the expiration or termination of this Agreement. . .

Furthermore, Section 6 of the Liberty Authorized Agent Agreement, titled Ownership of Expirations and Customer Information, also provides that customer information should only be used in connection with Defendant's employment under the Agreement. See Exhibit C.

12.    Section 6(c) of the Statutory Agent Agreement expressly sets forth Defendant's responsibilities upon termination:

Upon termination of this Agreement by either party, for any reason except your transfer to another full-time sales position with Prudential, or at any time the Company in

6

its discretion so directs, <u>you shall immediately return to Prudential all documents described above, including but not limited to, originals, copies and computerized records containing such Confidential and Proprietary Information.</u> You further agree, upon written request from Prudential, to certify in writing that you have complied with this provision of this Agreement. (Emphasis added.)  <u>Exhibit B</u>, p.4

13.    Section 7 of the Statutory Agreement, titled "Restrictive Covenant", specifically provides as follows:

"Upon termination of your association with the Company, from any capacity, you agree for a period of two year following the date of such termination, you will not, directly or indirectly, as to any product or service of the type issue, marketed or sold by the Company:

(i) solicit from or attempt to solicit from;
(ii) sell to or attempt to sell to

any person, company, or organization that was sold to or serviced by any agency to which you were assigned, whose name became known to you, or to whom you have sold, or for whom you were named Agent of Record, or servicing representative, on any product or service issued, marketed, or sold by the Company, during the course of your association with the Company in any capacity.   The activity prohibited includes, but is not limited to, attempting to induce any such person, company or organization to withdraw values from product/services in force with the Company for the purpose of entering into any non-Company transaction.

You also agree, during your association with the Company, in any capacity, and for a period of two years after the termination of your association with the Company, that you will not induce or attempt to induce any person associated with, or under contract with the Company to terminate, and that you will not otherwise facilitate the termination by any such person of, his/her relationship with the Company.  You also agree during the same time period, that you will not induce or attempt

7

to induce any such person to sell or solicit products or services on behalf of any other company which are of the same or similar type of those issued, marketed or sold by the Company, and that you will not otherwise facilitate such conduct. Exhibit B, p. 4-5

14.   Similarly, Section 7(c) of the Liberty Authorized Agent Agreement provides as follows:

For a period of two years from the termination of Your association with Prudential or PIBI in any capacity, You Agree that You shall not, directly or indirectly, solicit, cause or induce the replacement or movement of any Liberty personal lines policy that was sold by You, or for which You were named Agent of Record or servicing representative." Exhibit C, p.7

15.   Section 8 of the Statutory Agent Agreement specifically provides for injunctive relief in the event of a breach of the confidentiality provisions set forth above:

In the event of breach of either Section 6 or 7 of this Agreement, you acknowledge that damages alone will not be an adequate remedy and the Company will, in addition to damages, be entitled to injunctive or other equitable relief against you to enforce the provisions of these Sections, including but not limited to the relief set forth in section 11 below.  In addition, you agree that you will be liable for any damages, including but not limited to attorneys' fees, and/or related costs, incurred in connection with enforcing the provisions of these Sections of this Agreement. (Emphasis added.) Exhibit B, p. 5

16.   Accordingly, in Section 11 of the Statutory Agent Agreement, titled Temporary Restraining Order/Injunctive Relief, Defendant expressly consented to the issuance of an injunction against him in the event that he breached any of his obligations to Prudential:

You consent to the issuance of a temporary restraining order or a preliminary injunction by any court or agency with jurisdiction over you to prohibit your breach of any provision of this Agreement, or to maintain the status quo pending the outcome of any arbitration and/or litigation proceeding. <u>Exhibit B</u>, p. 5-6

### Defendant's Resignation

17.   Defendant resigned on April 3, 2007. However, Defendant did not allow Randy Vogel ("Vogel"), then the Operations and Control Manager for Prudential's Greater St. Louis office, to inspect the private office Defendant maintained in Edwardsville, Illinois. In fact, Hosto provided Prudential no advance notice of his intent to resign. Instead, Defendant announced his resignation during Vogel's visit to Defendant's Edwardsville office. Afterward, Defendant handed Vogel boxes of files and asserted that he'd enclosed all the files belonging to Prudential therein.

18.   At all times during his association with Prudential, the Company provided Defendant with significant benefits, including the following: substantial compensation; participation in the Company's retirement plan(s), comprehensive health and dental benefits; office and support facilities; payment of his annual registration fees with the NASD and the Illinois Insurance Department; training and access to and opportunities for continuing training, including study materials and related expenses enabling the acquisition of their securities and insurance licenses; computer equipment; research; licensing; underwriting; and brokerage operations.

**Defendant's Solicitation of Prudential Customers and Failure to Return**
**Prudential's Confidential And Proprietary Documents And Information**

19.    Prior to his departure from Prudential, Defendant gained access to highly confidential and proprietary business and client information in the course of handling numerous Prudential clients.    This information included, without limitation, Prudential's clients' names, addresses, telephone numbers, income, net worth, social security numbers, birth dates, contract renewal dates, account statements, and financial portfolio and asset allocation.    As explained above, Defendant signed two agreements with Prudential whereby he expressly agreed that the Company's client and business information are proprietary, required Defendant to hold such information in confidence and required Defendant to immediately return such documents and information upon the termination of his affiliation with Prudential and to refrain from using those documents to solicit Prudential customers to replace their policies with policies written by Prudential's competitors.

20.    Nonetheless, within months of Defendant's resignation on April 3, 2007, Prudential's Greater St. Louis office discovered that an aberrant number of Prudential customers Defendant once serviced had cancelled their Prudential policies and switched them with competitor policies. ' Many of them affirmed, however, they'd retained Defendant as their insurance agent.   Indeed, Prudential obtained a copy of the letter Defendant had disseminated to Prudential customers in May of 2007, soliciting their transfer of Prudential accounts elsewhere and

providing them the paperwork to facilitate the switch. A true and correct copy of which is attached hereto as Exhibit D (the "Hosto Solicitation Letter").

21. On August 30, 2007, Prudential's legal department sent Defendant a demand letter, admonishing him of his outstanding obligations to Prudential, ordering him to cease and desist, and warning him of the legal repercussions for failing to do so. A true and correct copy of the letter is attached hereto as Exhibit E ("the first Hosto Demand Letter"). Prudential's legal department also sent a letter dated August 30, 2007, to Defendant's new employer, Broker Dealer Financial, informing them of Defendant's outstanding obligations to Prudential and asking them to secure Defendant's compliance. A true and correct copy of the letter is attached hereto as Exhibit F ("the first Broker Dealer Financial Demand Letter").

22. On September 13, 2007, Hosto executed an affidavit in which he swore, under penalty of perjury, that "I no longer have in my possession, custody, or control any such Prudential property." A true and correct copy of the affidavit is attached hereto as Exhibit G ("the Hosto Affidavit"). Notwithstanding Hosto's sworn statement, Prudential, in the months following, continued to receive complaints from its customers that Defendant had solicited them and/or divulged their confidential financial and personal information without authorization.

23. Accordingly, on April 24, 2008, Prudential's legal department sent Broker Dealer Financial another demand letter. A true and correct copy of the letter is attached hereto as Exhibit H ("the second Broker Dealer Financial Demand

Letter"). In it, Prudential's legal department informed Broker Dealer Financial that Prudential had evidence that Hosto had continued to contravene the restrictive covenants in the Prudential Agreements and that, contrary to his sworn affidavit, he had retained confidential and proprietary documents and information belonging to Prudential. Prudential's legal department further asked Broker Dealer Financial to inspect Defendant's office to confirm Prudential's suspicions.

24. On May 2, 2008, David Dunn, Broker Dealer Financial's General Counsel, responded to the second Broker Dealer Financial Demand Letter. A true and correct copy of the letter is attached hereto as Exhibit I ("the second Broker Dealer Financial Demand Letter"). Broker Dealer Financial informed Prudential that an unannounced inspection of Defendant's office had unearthed files belonging to Prudential clients, and moreover, during that inspection, Defendant had revealed that he had replaced Prudential accounts with third-party fixed products. Broker Dealer Financial removed 109 Prudential files from Defendant's office and returned them to Prudential.

25. Over the last three months, complaints about Defendant have persisted. Prudential customers have reported that Defendant has solicited them and orchestrated transfer of their Prudential policies to competitor agencies. In fact, one Prudential customer complained that Defendant admitted he still possessed their property and casualty file and had switched their policy to another agency without their authorization.

12

26.    Prudential clients entrusted their personal information to Prudential with the expectation that the information would remain confidential and would not be disclosed to third parties.  Defendant had access to this information solely by virtue of his association with the Company.  Prudential and Defendant are obliged to maintain the confidentiality of such information.  For its part, Prudential took numerous steps to meet its obligations.  The Company has implemented numerous policies to ensure the confidentiality of its client information.  Defendant was fully aware of, and responsible for, complying with Prudential's internal policies regarding confidentiality.

27.    Pursuant to Prudential policies and procedures, an agent is given access to confidential information pertaining only to the particular clients that he or she services.  In addition, each agent uses a confidential password to gain access to the information pertaining to the Prudential clients that he or she services.  In fact, when an agent first logs onto his computer each day, a message immediately appears on the screen emphasizing that client data is confidential and cannot be shared with third parties.  Prudential management also personally reviews out-going correspondence to ensure, inter alia, that no confidential or proprietary information is disclosed to third parties.

28.    Prudential's clients are developed by the Company at great expense and, typically, during a period of many years.  Prudential's client base constitutes the foundation of the Company.   The expenditures incurred by Prudential in obtaining and retaining its clients include millions of dollars spent

13

annually on national and local advertising.  Prudential also spends millions of dollars training its sales force and hiring sales support staff.  Prudential also provides to its agents, such as Defendant, the following support: clearing services, operations personnel, systems and support, management and compliance supervision, training and sales support, annual registration fees, computer equipment and services, mail, research, literature, seminars, trade and other professional news publications, promotional events, and the retention of experts in tax, asset management, benefits, insurance, real estate, estate planning, and numerous other sub-specialties.  Prudential incurs many other expenses in maintaining its goodwill in the insurance and securities industries and in obtaining and maintaining its client base.

29.   Accordingly, Prudential respectfully requests that this Court maintain the status quo, and enjoin Defendant from continuing to violate his Agreements with the Company, and his common law duties pending resolution of the arbitration between the parties.

_Sherida K Pyle_
Sherida Pyle

Sworn and subscribed to before me this 24th day of September, 2008.

_Darla K Burden_
Notary Public

DARLA K. BURDEN
Notary Public - Notary Seal
State of Missouri - County of Clay
My Commission Expires Aug. 18, 2009
Commission #05758098

14

# EXHIBIT A

http://finra.complinet.com/en/display/display_main.html?rbid=1189&...



| Print |

**13804.** Temporary Injunctive Orders; Requests for Permanent Injunctive Relief

**The Industry Code will apply to claims filed on or after April 16, 2007. In addition, the list selection provisions of the Industry Code will apply to previously filed claims in which a list of arbitrators must be generated after April 16, 2007; in these cases, however, the claim will continue to be governed by the remaining provisions of the old Code unless all parties agree to proceed under the new code.**

**(a) Temporary Injunctive Orders**

(1) In industry or clearing disputes required to be submitted to arbitration under the Code, parties may seek a temporary injunctive order from a court of competent jurisdiction. Parties to a pending arbitration may seek a temporary injunctive order from a court of competent jurisdiction even if another party has already filed a claim arising from the same dispute in arbitration pursuant to this paragraph, provided that an arbitration hearing on a request for permanent injunctive relief pursuant to paragraph (b) of this rule has not yet begun.

(2) A party seeking a temporary injunctive order from a court with respect to an industry or clearing dispute required to be submitted to arbitration under the Code must, at the same time, file with the Director a statement of claim requesting permanent injunctive and all other relief with respect to the same dispute in the manner specified under the Code. The party seeking temporary injunctive relief must also serve the statement of claim requesting permanent injunctive and all other relief on all other parties in the same manner and at the same time as the statement of claim is filed with the Director.

(3) Filings and service under this rule must be made by facsimile, overnight delivery service or messenger. Service must be made on all parties at the same time and in the same manner, unless the parties agree otherwise. A party obtaining a court-issued temporary injunctive order must notify the Director and the other parties of the issuance of the order within one business day.

**(b) Hearing on Request for Permanent Injunctive Relief**

(1) Scheduling of Hearing

If a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order. If the 15th day falls on a Saturday, Sunday, or NASD holiday, the 15-day period shall expire on the next business day. Unless the parties agree otherwise, a hearing lasting more than one day will be held on consecutive days when reasonably possible. The Director will provide to all parties notice of the date, time and place of the hearing at least three days prior to the beginning of the hearing.

(2) Composition of Arbitration Panel

The hearing on the request for permanent injunctive relief will be heard by a panel of three arbitrators. The composition of the panel will be determined in accordance with Rule 13402.

(3) Selection of Arbitrators and Chairperson

(A)(i) In cases in which all of the members of the panel are non-public, the Director will generate and provide to the parties a list of seven arbitrators from NASD's roster of non-public arbitrators. The Director will send to the parties the employment history for the past 10 years for each listed arbitrator and other background information. At least three of the arbitrators listed shall be lawyers with experience litigating cases involving injunctive relief.

(ii) Each party may exercise one strike to the arbitrators on the list. Within three days of receiving the list, each party shall inform the Director which arbitrator, if any, it wishes to strike, and shall rank the remaining arbitrators in order of preference. The Direct shall consolidate the parties' rankings, and shall appoint arbitrators based on the order of rankings on the consolidated list, subject to the arbitrators' availability and disqualification.

9/25/2008 12:02 PM

http://finra.complinet.com/en/display/display_main.html?rbid=1189&...

(B)(i) In cases in which the panel consists of a majority of public arbitrators, the Director will generate and provide to the parties a list of nine arbitrators from NASD's roster of arbitrators. The Director shall send to the parties employment history for the past 10 years for each listed arbitrator and other background information. At least a majority of the arbitrators listed shall be public arbitrators, and at least four of the arbitrators listed shall be lawyers with experience litigating cases involving injunctive relief.

(ii) Each party may exercise two strikes to the arbitrators on the list. Within three days of receiving the list, each party shall inform the Director which arbitrators, if any, it wishes to strike, and may rank the remaining arbitrators in order of preference. The Director will combine the parties' rankings, and will appoint arbitrators based on the order of rankings on the combined list, subject to the arbitrators' availability and disqualification.

(C)(i) Each party must inform the Director of its preference of chairperson of the panel by the close of business on the next business day after receiving notice of the panel members.

(ii) If the parties do not agree on a chairperson within that time, the Director shall select the chairperson. In cases in which the panel consists of a majority of public arbitrators, the Director will select a public arbitrator as chairperson. Whenever possible, the Director will select as chairperson the lawyer with experience litigating cases involving injunctive relief whom the parties have ranked the highest.

(D) The Director may exercise discretionary authority and make any decision that is consistent with the purposes of this rule and the Code to facilitate the appointment of panels and the selection of chairperson.

(4) Applicable Legal Standard

The legal standard for granting or denying a request for permanent injunctive relief is that of the state where the events upon which the request is based occurred, or as specified in an enforceable choice of law agreement between the parties.

(5) Effect of Pending Temporary Injunctive Order

Upon a full and fair presentation of the evidence from all relevant parties on the request for permanent injunctive relief, the panel may prohibit the parties from seeking an extension of any court-issued temporary injunctive order remaining in effect, or, if appropriate, order the parties jointly to move to modify or dissolve any such order. In the event that a panel's order conflicts with a pending court order, the panel's order will become effective upon expiration of the pending court order.

(6) Fees, Costs and Expenses, and Arbitrator Honorarium

(A) The parties shall jointly bear reasonable travel-related costs and expenses incurred by arbitrators who are required to travel to a hearing location other than their primary hearing location(s) in order to participate in the hearing on the request for permanent injunctive relief. The panel may reallocate such costs and expenses among the parties in the award.

(B) Each party seeking a temporary injunctive order in court pursuant to this rule must pay a non-refundable surcharge of $2,500 at the time the party files its statement of claim and request for permanent injunctive relief. In the award, the panel may decide that one or more parties must reimburse a party for part or all of the surcharge. The surcharge is in addition to all other non-refundable filing fees or costs that are required under the Code.

(C) Notwithstanding any other provision in the Code, the chairperson of the panel hearing a request for permanent injunctive relief pursuant to this rule shall receive an honorarium of $375 for each single session, and $700 for each double session, of the hearing. Each other member of the panel shall receive an honorarium of $300 for each single session, and $600 for each double session, of the hearing. The parties shall equally pay the difference between these amounts and the amounts panel members and the chairperson receive under the Code pursuant to Rule 13214. The panel may reallocate such amount among the parties in the award.

(c) Hearing on Damages or Other Relief

(1) Upon completion of the hearing on the request for permanent relief, the panel may, if necessary, set a date for any subsequent hearing on damages or other relief, which shall be held before the same panel and which shall include, but not be limited to, the same record.

(2) The parties shall jointly bear reasonable travel-related costs and expenses incurred by arbitrators who are required to travel to a hearing location other than their primary hearing location(s) in order to participate in any subsequent hearings on damages or other relief. The panel may reallocate such costs and expenses among the

http://finra.complinet.com/en/display/display_main.html?rbid=1189&...

parties in the award.

Adopted by SR-NASD-2004-011 eff. April 16, 2007.

**Selected Notice:** <u>07-07</u>

©2008 FINRA. All rights reserved.

9/25/2008 12:02 PM

# EXHIBIT B

05/23/2007   08:27   3148783537   PRUDENTIAL   PAGE   02/16

*840517*
*STCS*

 Prudential

# Statutory Agent Agreement

# STATUTORY AGENT AGREEMENT

This Agreement is entered into as of the _2_ day of _April_, _2001_, by and between The Prudential Insurance Company of America ("Prudential" or the "Company," which hereinafter shall include all affiliates and subsidiaries of Prudential, as applicable), and you, _Barry A. Hosto_ .

WHEREAS, Prudential desires for you to become associated with the Company as a statutory agent; and you have agreed to be associated with Prudential as a statutory agent; and the parties mutually desire to define their respective duties and responsibilities;

NOW THEREFORE, the parties agree as follows:

## Section 1 - Statutory Employee Status

You understand that you are an independent contractor and are classified as a statutory employee pursuant to the Internal Revenue Code. As a statutory employee you agree to use substantially all of your time and best effort to solicit life insurance and annuity applications for the Company and to occasionally solicit applications for other products as the Company may authorize from time to time. However, you will at all times operate as a "full time life insurance salesman" for the Company within the meaning of section 3121 (d) of the Internal Revenue Code of 1986, as amended.

## Section 2 - Appointment

The Company hereby appoints you as an agent of the Company, as a registered representative of Pruco Securities Corporation ("Pruco"), a subsidiary of Prudential and, as applicable, an investment advisor representative of Pruco. In this capacity, you may provide financial planning and investment advisory services, as applicable, and solicit and procure applications for all types of financial services products, including, but not limited to all types of insurance contracts, annuity contracts, mutual funds and other products/services issued or marketed by the Company, provided that you are duly qualified, properly licensed, registered, appointed and approved by the Company, pursuant to any applicable regulatory requirements, Company policies or rules.

You understand that you are not permitted to engage in solicitation of any business or to provide services as an agent, registered representative or, if applicable, financial advisor or planner until you are appropriately licensed, registered and appointed, in accordance with applicable state and federal requirements. In addition, you agree to abide by all applicable federal and state laws, all rules and regulations set forth under all applicable federal and state laws, all rules and regulations set forth by all relevant regulatory agencies, exchanges, and self-regulatory bodies, all pronouncements from any other legally binding source, and all of the Company's internal policies, procedures and rules, and agree to submit to such supervision as may be necessary to ensure compliance therewith.

1

Edition 9-2000

## Section 3 - Performance/Conflicts of Interest

You agree to devote substantially all of your time and efforts to the performance of your duties as a statutory agent. You are to render all service incidental to the maintenance and care of the Company's business which may be required by policyholders or by the Company, in compliance with all applicable laws, regulations and/or Company policies.

You will not, directly or indirectly, act for the benefit of any person, firm or corporation other than Prudential, except pursuant to Company-sponsored marketing agreements, Company-issued guidelines, or when specifically authorized in writing by an authorized officer of the Company.

You are to hold all monies collected on behalf of the Company as trust funds and immediately turn them over to the Company without deduction. Such monies shall not be used by you for any purpose whatsoever, except as specifically authorized by the Company, but you shall immediately deposit them to the credit of the Company in a bank designated by the Company, or shall pay them over to such person or entity as the Company may designate.

## Section 4 - Limitations On Authority

In addition to other limitations set forth in the Company's internal policies, rules and procedures, and/or pursuant to applicable laws, regulations or other legally binding sources, you understand that you are not authorized to, and agree not to do or attempt to, do any of the following:

a) Solicit or perform any investment or financial planning services except in accordance with the policies and procedures of Prudential, including, but not limited to, those of Prudential Financial Planning Services;

b) Solicit or sell any security or registered products except in accordance with the policies and procedures of Pruco and are authorized by Prusec;

c) Pay or offer any rebate of premium, or provide or offer any other inducement not specified in a product or service, to any person as an inducement to purchase any product or service;

d) Incur any expense or liability, or take on any obligation whatsoever, on account of the Company, without specific written authority;

e) Issue or use any advertising or marketing materials, of any form whatsoever and in

2

Edition 9-2000

any way relating to the business of the Company including business submitted through the Company's approved outbrokerage program, other than those issued or approved or permitted for use by the Company;

f) Make, alter or discharge any contract or form, or extend the time for paying a premium, or waive forfeiture or any other provision or condition of any product/service issued by the Company;

g) Deliver, or allow the delivery of, any product/service or form unless the health of the person or persons proposed is in accordance with the Company's requirements, if any, and where required, unless the first premium thereof is paid in full;

h) Induce, or attempt to induce any policyholder to withdraw values from products/services in force with the Company for the purpose of entering into any non-Company sponsored and/or approved transaction;

i) Violate applicable replacement regulations, Company replacement policies, or any other law or regulation applicable to the sale and service of Company or Company-sponsored products; and or

j) Make any public statement, either orally or in writing, relating to the business of this or any other financial services company without either: (1) securing the approval of the Company; or (2) making it clear that the opinions expressed are his/her own and not necessarily those of the Company.

## Section 5 - Compensation

Prudential agrees to compensate you in accordance with the terms and conditions of its then applicable Compensation Plans and its Commission and Compensation Schedules, all of which may be modified by Prudential from time to time, without notice, in its sole discretion.

## Section 6 - Confidential and Proprietary Information; Company Documents; Company Property

a) Whether original, duplicated, computerized, memorized, handwritten, or in any other form, all books, accounts, computer and/or other records, documents, vouchers, letters received, including but not limited to the names, addresses and phone numbers of any account, customer, client, customer lead or prospect, and/or all items provided by, provided to, or prepared for Prudential, and/or relating to or connected with the business of Prudential ("Confidential and Proprietary Information"), at any time during your association with the Company in any capacity, are and shall remain the sole and exclusive property of Prudential during your association with Prudential and thereafter.

3

Edition 9-2000

b) All Confidential and Proprietary Information, whether provided to you by Prudential or by any customer, client, customer lead or prospect, or from any other source, or prepared by you while associated with the Company in any capacity, is entrusted to you as an agent and representative of Prudential. You acknowledge that this Confidential and Proprietary Information is unique, extremely valuable to Prudential and is developed and acquired by great expenditures of time, effort and cost. You agree that this Confidential and Proprietary Information shall be treated by you at all times as confidential and as the proprietary property of Prudential. You agree not to divulge or disclose this Confidential and Proprietary Information to any third-party, either during your association with the Company or at any time thereafter, except in the performance of your duties for the Company.

c) Upon termination of this Agreement by either party, for any reason except your transfer to another full-time sales position with Prudential, or at any time the Company in its discretion so directs, you shall immediately return to Prudential all documents described above, including but not limited to, originals, copies and computerized records containing such Confidential and Proprietary Information. You further agree, upon written request from Prudential, to certify in writing that you have complied with this provision of this Agreement.

d) You agree to abide by all other Company document retention policies and all Company policies, rules and standards relating to protecting the confidentiality of the Company's confidential and proprietary customer and business information.

## Section 7 - Restrictive Covenant

Upon termination of your association with the Company, from any capacity, you agree that for a period of two years following the date of such termination, you will not, directly or indirectly, as to any product or service of the type issued, marketed or sold by the Company:

(i) solicit from or attempt to solicit from; or

(ii) sell to or attempt to sell to

any person, company or organization that was sold to or serviced by any agency to which you were assigned, whose name became known to you, or to whom you have sold, or for whom you were named Agent of Record, or servicing representative, on any product or service issued, marketed or sold by the Company, during the course of your association with the Company in any capacity. The activity prohibited includes, but is not limited to, attempting to induce any such person, company or organization to withdraw values from product/services in force with the Company for the purpose of entering into any non-Company transaction.

You also agree, during your association with the Company, in any capacity, and for a period of two years after the termination of your association with the Company, that you will not induce or attempt to induce any person associated with, or under contract

4

Edition 9-2000

with the Company to terminate, and that you will not otherwise facilitate the termination by any such person of, his/her relationship with the Company.  You also agree, during the same time period, that you will not induce or attempt to induce any such person to sell or solicit products or services on behalf of any other company which are of the same or similar type of those issued, marketed or sold by the Company, and that you will not otherwise facilitate such conduct.

## Section 8 - Violation of Sections 6 or 7

In the event of breach of either Section 6 or 7 of this Agreement, you acknowledge that damages alone will not be an adequate remedy and the Company will, in addition to damages, be entitled to injunctive or other equitable relief against you to enforce the provisions of these Sections, including but not limited to the relief set forth in section 11 below.  In addition, you agree that you will be liable for any damages, including but not limited to attorneys' fees, and/or related costs, incurred in connection with enforcing the provisions of these Sections of this Agreement.

## Section 9 - Indebtedness

To the extent permitted by applicable law, you authorize the Company to offset as a first lien any of your indebtedness to the Company against any amounts accruing to you or your executor(s), administrator(s), or assign(s) from the Company, until the amount of such indebtedness is fully paid, with applicable interest.  This authorization includes, but is not limited to, authorization for the Company to deduct indebtedness from any final payment due to you upon the Agreement's termination.

Debt not fully satisfied by such offset is your personal debt and is recoverable at any time with the maximum allowable interest under the Company's policies and applicable law.  The Company reserves the right to demand full and immediate repayment of such indebtedness.  The terms of this Section are without limitation on any of the rights of the Company, whether set forth in this Agreement or not, both prior to and after the termination of this Agreement, to recover any indebtedness.

## Section 10 - Arbitration

You agree to submit and settle any and all disputes, claims or controversies arising out of or related to your association with the Company, including but not limited to the termination of your association with the Company and/or violations of this Agreement, pursuant to the Constitution and Rules of the National Association of Securities Dealers, Inc.  In the event that you violate any part of this Agreement, you agree to pay all attorneys' fees incurred by the Company to enforce its rights hereunder.

## Section 11 - Temporary Restraining Order/Injunctive Relief

You consent to the issuance of a temporary restraining order or a preliminary

5

injunction by any court or agency with jurisdiction over you to prohibit your breach of any provision of this Agreement, or to maintain the status quo pending the outcome of any arbitration and/or litigation proceeding.

## Section 12 - Entire Agreement/Other Agreements

You understand that this Agreement constitutes the entire agreement between the parties with respect to the matters set forth herein and supersedes all prior agreements, contracts and understandings, oral or written, that you may have had with the Company, except to the extent rights under any such agreements, contracts or understandings have been preserved; provided, however, that this Agreement will not in any manner limit any provisions of any such agreements, contracts or understandings with respect to the Company's ability to recover indebtedness due the Company; and provided further that in the event of a conflict between prior provisions on indebtedness and those contained in this Agreement, all such provisions shall be construed to afford the Company the maximum authority to recover indebtedness.

You understand that the Company reserves the right, in its sole discretion, to modify, without notice, any programs, plans or policies including but not limited to, those concerning transfers of business or transfer of compensation to an approved successor, compensation and outbrokerage. This Agreement may be modified only by a written document signed by an authorized officer of the Company.

## Section 13 - Representations and Warranties

You warrant and represent that except as disclosed in writing to Prudential, you have no obligations which would either interfere or conflict with your ability to perform your duties and responsibilities to the Company, whether set forth in this Agreement or otherwise. You also agree to indemnify and hold the Company harmless against any and all costs, attorneys' fees, losses or liabilities incurred by the Company in connection with any claimed or actual breach of any claimed or actual preexisting obligation.

Except as may have been disclosed in writing to the Company, you represent and warrant that there are no prior or existing customer complaints, regulatory, self-regulatory, administrative, civil or criminal matters, or any other existing or pending impediments that may affect your association with the Company, licensing or registration. Should you become a subject of any such complaints, actions or matters, you agree to immediately report, in writing, all relevant facts to Prudential and Pruco.

## Section 14 - No Company Liability For Furnishing Information

The Company shall incur no liability whatsoever by reason of furnishing information, upon inquiry from any person or organization, regarding your record with the Company, including but not limited to information relating to personal character,

6

Edition 9-2000

habits, ability or cause for leaving the service of the Company.

## Section 15 - Non-Waiver of Rights

Except where agreed to by the Company in writing, any failure by the Company
to exercise any of its rights under this Agreement shall not be deemed to be a waiver of
such rights and shall not in any way interfere with the ability of the Company to exercise
such rights both prior to or after termination of this Agreement.

## Section 16 - Severability

Any finding that a term or provision of this Agreement is invalid pursuant to law
or regulation in a particular jurisdiction will not render the remaining terms or provisions
of the Agreement invalid in that jurisdiction, and will not affect the validity of any of the
terms or provisions of this Agreement in any other jurisdiction.

## Section 17 - Indemnification

You agree to indemnify and hold Prudential harmless against any and all losses or
liabilities incurred by Prudential as a result of: your breach of any of the promises
contained herein, any errors committed by you, violation by you of any federal or state
law, violation by you of any rule or regulation of any regulatory agency or self regulatory
agency, violation by you of any pronouncement from any other legally binding source, or
violation by you of any policy or rule of Prudential during the course of your association
with the Company. You further agree that Prudential shall have the right, to the full
extent of applicable law, without notice to you, to withhold amounts representing such
losses or liabilities from any monies payable to you, or otherwise held by Prudential for
you, as compensation or otherwise.

## Section 18 - Governing Law

This Agreement will be governed by the law of the State of New Jersey.

## Section 19 - At-Will Association

Nothing contained in this Agreement is intended to create a contract of
employment for any definite period of time, or guarantees compensation for any definite
period of time. Your association with the Company as a statutory employee as well as
this Agreement are terminable at-will, and both the Company and you have the right to
end the association at any time for any reason or no reason with or without notice.

## Section 20 - Assignment

The rights and benefits of Prudential under this Agreement shall be transferable,
and all provisions hereunder shall inure to the benefit of, and be enforceable by, its

7

successors and assigns.

You may not assign any compensation paid to you by Company, or that will be paid to you by the Company, or to directly or indirectly sell or otherwise transfer business or the actual or potential compensation or compensation interest from business you will solicit, sell, or service on behalf of the Company, to a third party other than as authorized in writing by the Company. You understand that your eligibility to participate in any transfer of business and/or transfer of compensation program will be determined by the Company.

## Section 21 - Survivability of Contractual Provisions

All rights of the Company will survive the termination of this Agreement and the termination of your association with the Company from any capacity.

By executing this Agreement, you acknowledge that you have read and understand this Agreement in its entirety. You acknowledge that this Agreement will be effective on the date that the Company executes it, by its authorized officer, and that such Company execution may be in the form of a facsimile stamp or otherwise.

_____          3 | 9 | 0 |
Statutory Agent Signature                 Date

Barry  A.  Hosto                          STCS
Statutory Agent Name (Please Print)       Agency Code


The Prudential Insurance Company of America

By: _____
              Chief Field Officer


8


Edition 9-2000

# EXHIBIT C

## AUTHORIZED AGENT AGREEMENT

THIS AGREEMENT, effective as of _____OCT 3 1_____, 2003, (the "Effective Date") is made by and between The Prudential Insurance Company of America, a New Jersey corporation ("Prudential"), Prudential Insurance Brokerage, Incorporated, an Arizona corporation with its principal place of business at 213 Washington Street, Newark, New Jersey, together with its agency subsidiaries and affiliates (collectively "PIBI") and Bassy A Hosto, hereinafter referred to as "You" or "Your."

840517

WHEREAS, PIBI will be appointed by Helmsman Insurance Agency, Inc., a Massachusetts corporation ("Helmsman"), on behalf of Prudential Property and Casualty Insurance Company, Prudential Commercial Insurance Company, Prudential General Insurance Company and one or more insurance company subsidiaries of Liberty Mutual Group, Inc. ("Liberty Mutual") (collectively, "Liberty" or the "Liberty Companies"), to act as the authorized agent of one or more of the Liberty Companies for soliciting, collecting underwriting information with respect to, and at Liberty's option, servicing certain property and casualty insurance products; and

WHEREAS, You wish to be appointed by Helmsman on behalf of Liberty as one or more of the Liberty Companies' agent for soliciting, collecting underwriting information with respect to and (at Liberty's option) servicing Liberty's personal lines property and casualty insurance products;

NOW, THEREFORE, in consideration of the mutual covenants, agreements, and promises herein contained, the parties do hereby agree as follows:

1. **Authorization**  PIBI and You hereby agree that You will solicit, collect underwriting information with respect to and, at Liberty's option, service those property and casualty insurance products as are set forth in Appendix A (which may be amended from time to time by PIBI pursuant to agreement with Liberty), attached hereto, in those states and territories in which You are, as applicable, properly licensed, appointed and otherwise permitted by Liberty.  This agreement described in this paragraph is subject to the following:

    a.    an effective appointment of You by Helmsman on behalf of one or more of the Liberty Companies, provided that You acknowledge that Helmsman on behalf of Liberty has final authority with respect to Your appointment and may, in its sole discretion, withdraw, terminate, or suspend Your appointment, subject to applicable law and the terms and conditions of any written agreement among Prudential, PIBI, Helmsman and any of the Liberty Companies;

    b.    the terms and conditions of this Agreement;

    c.    any written general or specific instructions, guidelines, standards, and minimum quality criteria as may from time to time be given to You by PIBI or one or more of Helmsman or the Liberty Companies; and

1

d.    any requirements as are imposed by law or regulation.

**2.  Exclusivity**  You shall not solicit personal lines property and casualty insurance products on behalf of any insurance company other than one or more of the Liberty Companies, except in the following limited circumstances:  (a) If properly licensed, appointed and authorized, You may solicit and sell personal lines property and casualty insurance products for other insurance companies identified on, and as limited by, Appendix B  (as it may be modified by PIBI from time to time pursuant to any agreement between PIBI and Liberty), except that if Liberty offers a personal lines product offered by an insurance company identified on Appendix B , the business must be submitted to Liberty on a right of first refusal basis and Liberty must reject the business; or (b) You may solicit and sell personal lines property and casualty insurance products for other insurance companies if You are a party to a written agent  agreement with Prudential in effect prior to Effective Date I that provides that You have unlimited outbrokerage authority.  You shall not directly or indirectly sell personal lines new business for another insurer after the Effective Date, with the limited exceptions permitted pursuant to subparagraphs (a) and (b). Unless an exception applies, within ten business days of the Effective Date, You shall notify the insurance company that Your personal lines new business authority is to be terminated effective immediately as is Your appointment to act as an insurance agent for personal lines insurance products unless Your continued appointment is required by the insurance company in order for You to service or be paid for business written prior to Effective Date.  Under no circumstances will You directly or indirectly, during the term of this agreement or Your association with Prudential in any capacity, prompt a policyholder of Liberty to transfer, or will You otherwise knowingly solicit the movement of, or replacement of, any policy-in-force (including unaligned policies) from Liberty to another insurance company.  You agree that Helmsman and Liberty shall be third party beneficiaries of this Agreement with respect to the provisions of this Section 2.

**3.  Your Duties**  Subject to any general or specific instructions, guidelines, standards, requirements and minimum quality or performance criteria as may from time to time be given to You by Prudential, PIBI, Helmsman or one or more of the Liberty Companies, You agree to:

a.    Subject to the terms of this Agreement, provide all usual and customary services of an insurance producer on all insurance policies and contracts You place with any of the Liberty Companies.

b.    Maintain in good standing all licenses and permits required to carry out the terms and conditions of this Agreement and comply with all laws and regulations necessary to maintain such licenses and permits.

c.    Bind Liberty for insurance policies and contracts pursuant to Section 1 of this Agreement, subject to (i) such authority limits as Liberty in its sole discretion may establish from time to time and (ii) Liberty's final authority to suspend, terminate or withdraw Your appointment or binding authority.

d.    Collect the initial required premiums in customer check or money order for new business written by Liberty and promptly, but no later than three business days following receipt, forward such premiums to Liberty

2

without setoff or deduction for any amount due from PIBI or Liberty to
You, and agree to comply with any direct billing arrangements established
by Liberty.

e.   Promptly, but no later than five business days, forward to Liberty written
     copies of applications, binders, policies, certificates (when required)
     and/or endorsements after such transaction occurs or document is
     executed, and to promptly notify Liberty of any cancellations or changes
     to any such document.

f.   Promptly, but no later than five business days following receipt, refer
     claims received by You to the relevant Liberty Company's claims division.

g.   Promptly, but no later than five business days following notice to You,
     refer any complaint with respect to Liberty's products to Liberty, provided
     that any insurance department complaint, attorney demand letter, or any
     letter threatening litigation shall be sent via courier or facsimile so that it
     is received by Liberty within five business days, after the complaint is
     received by You, and provide to Liberty any information that will assist
     Liberty in responding to the complaint.

h.   Comply with any and all applicable laws and regulations pertaining to the
     issuance and sale of personal lines property and casualty insurance and
     with any and all written general or specific instructions, guidelines,
     standards, requirements and minimum quality or performance criteria as
     may from time to time be given to You by PIBI or Helmsman or one or
     more of the Liberty Companies, it being understood by You that (i)
     Prudential or PIBI may discipline You for failing to follow PIBI or
     Liberty's guidelines and requirements or for willful misconduct; (ii) that
     Prudential, PIBI, or Liberty, as the case may be, shall be granted during all
     normal business hours, access to Your files and records related to personal
     lines property and casualty business subject to the terms of this
     Agreement, including without limitation all financial records, policy
     applications, policy correspondence, and cancellation/termination
     correspondence, in order that Liberty may monitor, audit, or test Your
     compliance with the terms of this Agreement; and (iii) that Liberty may, in
     its sole discretion (subject to applicable law), in addition to the actions
     described in Section 7 herein, suspend, terminate or withdraw Your
     binding authority for Your failure to comply with this Agreement,
     including, without limitation, failing to comply with applicable laws or
     regulations or to meet any minimum quality and performance criteria or
     other criteria, guidelines or requirements as Liberty through Helmsman
     may then have in effect.

i.   Have regular contact with representatives of Liberty in meetings
     conducted in the ordinary course of business and as may be reasonably
     requested from time to time.

3

j.      Attend any mandatory periodic and ongoing compliance and product training provided by Prudential, PIBI or Liberty related to insurance regulatory compliance or Liberty's insurance products and take any initial and periodic proficiency examinations conducted by Prudential, PIBI or Helmsman, it being understood that if You fail to complete such training in a timely and satisfactory manner, Your appointment to represent Liberty may be terminated.

k.      Maintain adequate supplies of marketing materials relating to Liberty's products distributed by PIBI or by Helmsman with the permission of Prudential or PIBI.

l.      Hold in confidence Liberty's Confidential Information and not directly or indirectly report, publish, distribute, copy, disclose, or otherwise disseminate Liberty's Confidential Information, or any portion thereof, to any third party, for any purpose, except as expressly authorized in writing by Liberty. The provisions of this Section 3.l. shall survive the expiration or termination of this Agreement. "Confidential Information" shall include but is not limited to: (a) information regarding a parties' financial condition, customer and customer lists (including for the avoidance of doubt, Liberty's mass marketing/affinity/group client lists), information systems except as authorized by Liberty, business operations, plans or strategies, product information, and marketing and distribution plans, methods, and techniques; (b) information that is marked "confidential," "proprietary," or in like words, or that is summarized in writing as confidential prior to or promptly after disclosure to the other party; (c) any and all related research; (d) any and all designs, ideas, concepts, and technology embodied therein; (e) the provisions of this Agreement; (f) Helmsman's or Liberty's rating methodology and underwriting qualifications; and (g) Non-Public Personal Information which is defined by reference to applicable privacy law and PIBI or Liberty privacy policy, as applicable, and includes any information: (i) a consumer provides to PIBI or its affiliated companies or Helmsman or Liberty to obtain a personal lines product or service; (ii) about a consumer resulting from such a transaction; (iii) otherwise obtained about a consumer in connection with providing the personal lines product or service to that consumer; and (iv) any list, description, or other groupings of consumers (and publicly available information pertaining to them) that is derived using any of the foregoing information that is not publicly available information.

m.      Maintain errors and omissions insurance in such amounts as PIBI shall require.

## 4.   Limitations on Authority

You are not authorized to do and agree not to do any of the following things:

4

a.   Accept cash in payment of premiums.

b.   Service or adjudicate claims.

c.   Hold office in, or be a trustee or director of any insurance company.

d.   Publish or distribute any advertisements, circulars, or other materials referring to Liberty Mutual or Liberty or containing any of the Liberty Companies' name, without written approval from an officer of Liberty which shall be received through Prudential or PIBI.

e.   Pay, as an inducement to any person to purchase a policy or contract offered by Liberty, any rebate of premium or any inducement not specified in the policies or contracts of Liberty.

f.   Incur any expense or liability on account of Prudential, PIBI, Helmsman or Liberty without specific written authority.

g.   Make, alter, or discharge any of Liberty's forms, policies or contracts; or extend the time for paying a premium; or waive forfeitures.

h.   Bind any policy on behalf of Liberty that does not conform with the authority limits, instructions, guidelines, standards, coverages and criteria as may from time to time be given by Helmsman or one or more of the Liberty Companies.

i.   Demand or accept from any policyholder of Liberty or such policyholder's representatives any remuneration for rendering any service directly or indirectly related to the sale, solicitation, maintenance or care of the business of PIBI or Liberty.

j.   During the term of this Agreement, while You are an employee or agent of Prudential and until [illegible] 2006 [third anniversary of closing date], hire any sales or service employee or any manager thereof of Helmsman, Liberty or any affiliate of Liberty Mutual for purposes of an employment or agency relationship. During the term of this Agreement, while You are an employee or agent of Prudential and for a period of two years after termination or expiration of this Agreement solicit any sales or service employee or any manager thereof of Helmsman, any of Liberty or any affiliate of Liberty Mutual for purposes of an employment or agency relationship. The provisions of this Section 4.j. shall survive the expiration or termination of this Agreement.

k.   Transfer Your commission interest in Liberty's policies that are subject to the terms of this Agreement to another agent without the prior written approval of Prudential through PIBI and Liberty through Helmsman.

5

l.      Subject to applicable laws, fail to comply with any written general or
specific instructions, guidelines, standards, requirements, or minimum
quality or performance criteria as may from time to time be given to You
by Prudential, PIBI or one or more of Helmsman or the Liberty
Companies.

## 5. Compensation

PIBI agrees to pay compensation to You based upon commissions and incentive
payments received or receivable by PIBI from Helmsman or Liberty in connection with business
procured by You at the rates and for the periods as Prudential and PIBI may determine from time
to time, subject to the conditions set forth by Prudential and PIBI; provided that Prudential, PIBI
or Liberty may at any time offset monies not remitted to Liberty pursuant to the terms of this
Agreement by You from compensation PIBI or Liberty, respectively, owe You. Your
compensation shall include amounts paid by Liberty to PIBI for transmission to You.

## 6. Ownership of Expirations and Customer Information

To the full extent permitted by law or regulation, or as may be limited by
agreement between Helmsman or Liberty and PIBI or Prudential, the use and control of
expirations of policies placed with Liberty, both prior and subsequent to the Effective Date, and
any customer information related thereto, including, without limitation, policy expiration dates,
shall be the undisputed property of Liberty. You shall not use any records of those expirations in
any marketing method for the sale, service or renewal of any form of personal lines property and
casualty insurance on behalf of another insurance company, without the express written
permission of Liberty. To the extent that You possess copies of any such expirations or other
customer information in order to comply with legal obligations in connection with the services
provided by You to Liberty, You shall return the same to Liberty once Your obligation to keep
such copies expires. You agree that Liberty shall be a third party beneficiary of this Agreement
with respect to the provisions of this Section 6. This Section 6 shall survive termination or
expiration of this Agreement.

## 7. Termination

a.      Except as may otherwise be required by law or regulation, or as may be
limited by agreement between Helmsman or Liberty and PIBI or Prudential, this Agreement may
be terminated by either party by a notice in writing delivered personally, or mailed to the other
party at the last known address.

b.      For the avoidance of doubt, nothing in this Section 7 shall be
construed to limit the authority of Helmsman or Liberty
concerning (i) appointment; re-appointment; withdrawal,
termination or suspension of appointment, including Your right to
receive renewal commissions for new business written after the
Effective Date of this Agreement or Your access to Liberty's
customer records; and (ii) granting, suspension, termination, or
withdrawal of Your binding authority. Without limiting the

6

generality of this Section 7 or Section 3(h), herein, You acknowledge that Helmsman or Liberty may, in its sole discretion, suspend, terminate or withdraw (x) Your binding authority for failure to meet any minimum quality criteria established from time to time by Helmsman or Liberty, or (y) Your appointment for all purposes under this Agreement, including for renewals of new business written after the Effective Date, if You engage in willful misconduct, which shall include repeated violations of this Agreement, ethical violations, or acts which could constitute financial irregularity or material misrepresentations under state insurance laws.

c.  For a period of two years from the termination of Your association with Prudential or PIBI in any capacity, You agree that You shall not, directly or indirectly, solicit, cause or induce the replacement or movement of any Liberty personal lines policy that was sold or serviced by any agency to which You were assigned, that was sold by You, or for which You were named Agent of Record or servicing representative.

## 8. Representations and Warranties

You warrant and represent that except as disclosed in writing to Prudential or PIBI, You have no obligations which would either interfere or conflict with Your ability to perform Your duties and responsibilities to Prudential, PIBI, Helmsman and Liberty, whether set forth in this Agreement or otherwise. You also agree to indemnify and hold Prudential and PIBI harmless against any and all costs, attorneys' fees, losses or liabilities incurred by Prudential or PIBI in connection with any claimed or actual preexisting obligation.

Except as may have been disclosed in writing to Prudential or PIBI, You represent and warrant that there are no prior or existing customer complaints, regulatory, administrative, civil or criminal matters, or any other existing or pending impediments that may affect Your association with Prudential, PIBI, Helmsman, or Liberty. Should You become a subject of any such complaints, actions, or matters, You agree to immediately report, in writing, all relevant facts to Prudential and PIBI. You understand that, in reliance in part on these warranties and representations, it has been determined that You are eligible for appointment.

## 9. General Provisions-

a.  Prudential and PIBI shall incur no liability whatsoever by reason of furnishing information, upon inquiry from any person regarding Your record with Prudential, PIBI, Helmsman or Liberty, Your personal character, habits, or ability, or the cause for leaving the service of Prudential or PIBI.

7

b.  Any indebtedness due to Prudential or PIBI or Helmsman or Liberty from You shall be a first lien upon any amounts accruing to You hereunder, until the amount of such indebtedness is fully paid.

c.  No assignment of compensation accrued or to accrue under this Agreement shall be valid as against Prudential or PIBI or Helmsman or Liberty unless authorized in writing by PIBI, Helmsman or Liberty, as the case may be.

d.  With the exception of out-brokerage authority, if any, and, upon retirement, any practice transfer rights, both of which You may have as authorized by Prudential and approved, as necessary, by Helmsman or Liberty, this Agreement shall supercede any and all previous contracts or agreements between You, PIBI, Helmsman or Liberty, or Prudential Financial, Inc. (including any of its subsidiaries and affiliates) related to the solicitation of the personal lines property and casualty insurance products set forth in Appendix A, but will not in any manner rescind any of the provisions of such prior contracts or agreements with respect to indebtedness due to PIBI, Helmsman or Liberty, or Prudential Financial, Inc. (including any of its subsidiaries and affiliates) under any contract or agreement.

e.  You are an independent contractor and not an employee of Helmsman or Liberty.  Nothing contained herein shall be construed to create the relationship of partners, joint venturers, or employer and employee between You and PIBI or You and Helmsman or Liberty.

f.  All unused supplies, including policy forms, stamps, and other property furnished to You by Prudential or PIBI or Helmsman or Liberty shall remain the property of Prudential or PIBI or Helmsman or Liberty, respectively, and will be promptly returned to Prudential or PIBI or Helmsman or Liberty upon demand.

g.  Prudential or PIBI, as applicable, reserves the right, subject to the approval of Helmsman or Liberty, as necessary, to alter or modify in its discretion, with respect to business thereafter paid for, any of the terms of this Agreement including any of the applicable Appendices.

_____
Producer Signature

_____   23-03
Producer Name            Date

Prudential Insurance Brokerage, Inc.

By _____
Thomas Beresford, President

Barry A. Hostotlo

840517
Contract Number, Agency Code

Dated:  NOV 1 4 2003

Ⓧ Jaclyn Brooks

Ⓧ Jaclyn Brooks   8 10-23-03

Marketing Assistant

## APPENDIX A

### PRODUCTS YOU MAY SOLICIT UPON APPOINTMENT

The following lines of business comprise the Current Products subject to this Distribution Agreement:

- Private Passenger Automobile Insurance including pick-up trucks and vans

- Homeowners Insurance

- Homeowners Policy, Tenants Policy, Condominium Policy, Mobile Homes, Scheduled Personal Property, Workers Compensation

- Dwelling Fire and Allied Lines

- Dwelling Liability

- Inland Marine

- Watercraft Insurance

  - Yacht Policies

  - Small Boat and Motor Form

- Recreational Vehicles/Utility Trailers Insurance including:

  - Motor Homes

  - Motorcycles, Mopeds, Motor Scooters

  - Golf Carts

  - All Terrain Vehicles

  - Snowmobiles

  - Dune Buggies

  - Utility Trailers

  - Camper Trailers

  - Camper Bodies

- Flood Insurance

- Personal Catastrophe Policy (Umbrella)

- Earthquake Catastrophe

### Note:  Product offerings may be different in some states and are subject to change

9

## APPENDIX B

## SPONSORED OUTBROKERAGE AUTHORITY

**Prudential Insurance Brokerage, Inc. (PIBI)**
**List of Sponsored Property and Casualty Outbrokerage Programs**

| CARRIER | PRODUCT(S) |
|---|---|
| Progressive Insurance | Auto, Motorcycle, Dune Buggy, ATV, Watercraft |
| Homesite Insurance Company | Homeowner, Condo, Renter's, Dwelling Fire |
| Chubb Group of Insurance Companies | High Value Home, Auto, Watercraft, Scheduled Personal Property (SPP) |
| The Hartford Insurance Group | Small Commercial Lines – General Liability, Workers' Compensation, Commercial Auto, BOP |
| High Point (NJ only) | Auto, Dwelling Fire, PCAT, Watercraft, Flood |

10

# EXHIBIT D



# HOSTO FINANCIAL SERVICES, INC.

May 2007

Barry A. Hosto

Hosto Financial Services, Inc.
118 N Kansas Street, Edwardsville IL 62025
Tel 618 692-0061
Cell 618-779-5808
Fax 618 692-0063

BETTY
PAUL
305 N BUCHANAN
EDWARDSVILLE, IL 62025

Dear Betty and Paul:

As most of you know, I've recently left Prudential's Captive Division. However, because investment transactions are required to be processed through a broker/dealer, I've aligned myself with Broker Dealer Financial Services, an independent financial services company. With this new relationship, I can continue to offer all of the services that you have enjoyed in the past plus additional financial products that you may need in the future.

Although this affiliation will most likely be a seamless and transparent enhancement, I feel it is important to point out that my primary consideration in making this positive change is to continue providing you with the best service possible. All of the services that I was able to provide you with previously, will continue.

YOUR INVESTMENT HOLDINGS WILL NOT CHANGE IN THIS TRANSITION; simply our broker/dealer and clearing firm affiliations. Transfer of your existing accounts from Pruco is a *simple process*. All that is needed is that you sign the enclosed broker/dealer change forms as well as the Account Registration form. Both of these forms are highlighted in the areas that require you to enter information and sign. Once the forms are completed *in their entirety*, please return them to me in the enclosed, self-addressed, postage paid envelope. You will be receiving statements in the normal course of statement cycles from each of your current, existing investment companies.

I thank you for your continued trust and for allowing me to assist you with your financial needs. Please do not hesitate to call me if you have any questions.

Warmest Regards,

*Barry*

Barry Hosto

**MATERIAL REDACTED**

Securities Offered Through Broker Dealer Financial Services Corp. Member NASD & SIPC

Date Opened/Updated _____
Branch# 4C
RR# 4CBD

**BROKER DEALER FINANCIAL SERVICES CORP.**
Member NASD/SIPC

☐ Mutual Fund Direct
☐ Variable Annuity
☐ Variable Life

## ACCOUNT REGISTRATION AND ADDRESS

**Account Owner** _____
SSN/Tax ID _____  te of Birth 4-7-26  Marital Status _____
**Co-Owner/Custodian** _____
SSN/Tax ID _____  Date of Birth _____  Marital Status _____
Mailing Address 305 N BUCHANAN  City EDWARDSVILLE  State IL  Zip 62025
Phone Number (618) 656-3618  Email Address _____@_____
Is Applicant a US Citizen? ☒ Yes ☐ No (specify country and attach W8 form) _____
Required under Federal Law: Document Used to Verify Identity ☒ Unexpired Drivers License ☐ Passport ☐ Gov't ID with Picture
☐ Other _____ DL #: _____ Expiration: _____

## EMPLOYMENT AND ASSOCIATION

Account Owner Information: ☐ Employed ☐ Retired ☐ Self Employed ☐ Student ☐ Other
Employer _____ Occupation _____ Length of Employment _____
Address _____ City _____ State ____ Zip ____ Phone _____
Co-Owner Information: ☐ Employed ☐ Retired ☐ Self Employed ☐ Student ☐ Other
Employer _____ Occupation _____ Length of Employment _____
Address _____ City _____ State ____ Zip ____ Phone _____

## CUSTOMER PROFILE

| | | | | |
|---|---|---|---|---|
| Annual Income | ☐ Under $25,000 | ☐ $25,001-$75,000 | ☐ $75,001-$150,000 | ☐ $150,001-$300,000 ☐ Over $300,001 |
| Liquid Net Worth | ☐ Under $25,000 | ☐ $25,001-$100,000 | ☒ $100,001-$500,000 | ☐ $500,001-$1,000,000 ☐ Over $1,000,001 |
| Total Net Worth | ☐ Under $25,000 | ☐ $25,001-$100,000 | ☒ $100,001-$500,000 | ☐ $500,001-$1,000,000 ☐ Over $1,000,001 |

Investment Experience Yrs.
☒ Stocks ____ yrs
☒ Bonds ____ yrs
☒ Mutual Funds ____ yrs
☐ Margin Trading ____ yrs
☐ Option Trading ____ yrs
☐ Annuities ____ yrs

Investment Objectives
☒ Principal Preservation
☐ Current Income
☐ Long Term Growth
☐ Income and Growth
☐ Tax Favored Income
☐ Speculation

Risk Tolerance
Low —— High

Combined Tax Bracket (Federal and State)
_____

## DISCLOSURE INFORMATION

Initial Mutal Fund Purchase
1. Is the customer selling a mutual fund to open this account? ☐ Yes ☒ No
2. Has the customer liquidated any funds in the last 60 days? ☐ Yes ☒ No
3. Date Prospectus delivered to customer? _____
4. Breakpoint Disclosure? ____ Letter of Intent Dated? ____ Rights of Accumulation? ____
5. Initial Investment Amount? _____

Insurance Plan Type _____ Dollar Amount of Insurance? _____
1. Does this Insurance contract replace an existing contract? ☐ Yes ☐ No

This agreement contains a PRE-DISPUTE ARBITRATION CLAUSE on page 2. By signing this agreement the parties agree to the terms stated on page 2. I certify that the information on this page is accurate and complete and I have read page 2.  INITIAL ☒

Client Signature _____ Date ____ RR: _____
Joint Signature _____ Date ____ Manager: _____
RBV (12-06)  Compliance: _____

# MATERIAL REDACTED

Customer Copy (Page 2)

ARBITRATION

The following general provisional apply to all arbitrations pursuant to this section:

(i) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
(ii) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
(iii) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
(iv) The arbitrators do not have to explain the reason(s) for their award.
(v) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
(vi) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
(vii) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

B. Any controversies, which may arise out of or relating to the agreement shall be settled by arbitration in accordance with the rules then in effect by the NASD.

C. This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws.

D. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by a putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

## Customer Privacy Notice

At Broker Dealer Financial Services Corp., protecting the privacy of customer information is one of our most fundamental responsibilities. This notice summarizes our policy regarding the confidentiality and disclosure of customer information. We do not sell nonpublic information to anyone and only share such information as stated in this notice.

We take steps to safeguard customer information. We restrict access to your personal and account information to only those employees who need to know the information to provide products or services to you. We emphasize the importance of confidentiality through employee training, operating procedures, and our privacy policy. We also maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information. For example, we employ encryption and multilayer password protected applications through our clearing firm.

## NASD Public Disclosure Program

NASD Regulation's Public Disclosure Program makes available the disciplinary history of NASD members and their associated persons. You may obtain a brochure describing the Public Disclosure Program by calling the NASD Regulation Program Hotline number 800-289-9999 or by visiting the NASD Regulation's web site www.nasdr.com

## Inter-Agency Disclosure

Securities offered through Broker Dealer Financial Services Corp. Investment products are NOT FDIC insured, or insured by any United States government agency. They are NOT deposits guaranteed, or obligations of, or guaranteed by a bank or Broker Dealer Financial Services Corp. The purchase of such investments is subject to investment risk including the possible loss of principal.




Divisions:
BDF Investments
IBA Securities

Home Office Address:
8800 NW 62nd Avenue
P.O. Box 6240
Johnston, IA 50131-6240
(515) 286-2970

REV (12-06)

# Shareholder Change of Dealer Form

Date: _____

I/We hereby authorize the change of the dealer for our
PRUDENTIAL JENNISON DRYDEN
_____
(Investment Name)

Account Number/SSN _____ Registered as

Names: _____

_____

Address: 305 N BUCHANAN

EDWARDSVILLE, IL 62025

Telephone: ( 618 ) 656 - 3618

To: BARRY HOSTO        /    4CBD    /    4C
(Representative Name)     (Rep Number)   (Branch Number)

Rep SSN (Insurance Products) _____

Broker Dealer Financial Services Corp.
8800 NW 62nd Ave
P.O. Box 6240
Johnston, IA 50131-6240

Signed _____        Signed _____
(Customer 1)                  (Customer 2 if joint tenancy)

_____              _____
Print Name                    Print Name

BROKER
DEALER
FINANCIAL
SERVICES CORP.

MATERIAL
REDACTED

REV 12/04

Date Opened/Updated _____
Branch# 4C
RR# 4CBD

**BROKER DEALER FINANCIAL SERVICES CORP.**
Member NASD/SIPC

☐ Mutual Fund Direct
☐ Variable Annuity
☐ Variable Life

## ACCOUNT REGISTRATION AND ADDRESS

Account Owner _____
  SSN/Tax ID _____   Date of Birth 8-26-28   Marital Status _____
Co-Owner/Custodian
  SSN/Tax ID _____   Date of Birth _____   Marital Status _____
Mailing Address 305 N BUCHANAN   City EDWARDSVILLE   State IL   Zip 62025
Phone Number (618) 656-3616   Email Address _____ @ _____
Is Applicant a US Citizen? ☒ Yes ☐ No (specify country and attach W8 form) _____
Required under Federal Law: Document Used to Verify Identity ☒ Unexpired Drivers License ☐ Passport ☐ Gov't ID with Picture
☐ Other _____   DL #: _____   Expiration: _____

## EMPLOYMENT AND ASSOCIATION

Account Owner Information: ☐ Employed ☐ Retired ☐ Self Employed ☐ Student ☐ Other
Employer _____   Occupation _____   Length of Employment _____
Address _____   City _____   State ___ Zip ___ Phone _____
Co-Owner Information: ☐ Employed ☐ Retired ☐ Self Employed ☐ Student ☐ Other
Employer _____   Occupation _____   Length of Employment _____
Address _____   City _____   State ___ Zip ___ Phone _____

## CUSTOMER PROFILE

| | Under $25,000 | $25,001-$75,000 | $75,001-$150,000 | $150,001-$300,000 | Over $300,001 |
|---|---|---|---|---|---|
| Annual Income | ☐ | ☐ | ☐ | ☐ | ☐ |

| | Under $25,000 | $25,001-$100,000 | $100,001-$500,000 | $500,001-$1,000,000 | Over $1,000,001 |
|---|---|---|---|---|---|
| Liquid Net Worth | ☐ | ☐ | ☐ | ☐ | ☐ |
| Total Net Worth | ☐ | ☐ | ☐ | ☐ | ☐ |

Investment Experience Yrs.
☒ Stocks ___ yrs
☐ Bonds ___ yrs
☐ Mutual Funds ___ yrs
☒ Margin Trading ___ yrs
☐ Option Trading ___ yrs
☐ Annuities ___ yrs

Investment Objectives
☐ Principal Preservation
☐ Current Income
☐ Long Term Growth
☐ Income and Growth
☐ Tax Favored Income
☐ Speculation

Risk Tolerance  Low —— High

Combined Tax Bracket (Federal and State)

## DISCLOSURE INFORMATION

Initial Mutual Fund Purchase
1. Is the customer selling a mutual fund to open this account? ☐ Yes ☐ No
2. Has the customer liquidated any funds in the last 60 days? ☐ Yes ☐ No
3. Date Prospectus delivered to customer? _____
4. Breakpoint Disclosure? ___ Letter of Intent Dated? ___ Rights of Accumulation? ___
5. Initial Investment Amount? _____

Insurance Plan Type _____   Dollar Amount of Insurance? _____
1. Does this Insurance contract replace an existing contract? ☐ Yes ☐ No

This agreement contains a PRE-DISPUTE ARBITRATION CLAUSE on page 2. By signing this agreement the parties agree to the terms stated on page 2. I certify that the information on this page is accurate and complete and I have read page 2.   INITIAL ☒

Client Signature ☒   Date ___ RR: ___
Joint Signature ___   Date ___ Manager: ___
REV (12-06)   Compliance: ___

# MATERIAL REDACTED

Customer Copy (Page 2)

**ARBITRATION**

A. The following general provisional apply to all arbitrations pursuant to this section:

(i) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

(ii) Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

(iii) The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.

(iv) The arbitrators do not have to explain the reason(s) for their award.

(v) The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

(vi) The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

(vii) The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

B. Any controversies, which may arise out of or relating to the agreement shall be settled by arbitration in accordance with the rules then in effect by the NASD.

C. This agreement to arbitrate constitutes a waiver of the right to seek a judicial forum unless such a waiver would be void under the federal securities laws.

D. No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by a putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this agreement except to the extent stated herein.

## Customer Privacy Notice

At Broker Dealer Financial Services Corp., protecting the privacy of customer information is one of our most fundamental responsibilities. This notice summarizes our policy regarding the confidentiality and disclosure of customer information. We do not sell nonpublic information to anyone and only share such information as stated in this notice.

We take steps to safeguard customer information. We restrict access to your personal and account information to only those employees who need to know the information to provide products or services to you. We emphasize the importance of confidentiality through employee training, operating procedures, and our privacy policy. We also maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information. For example, we employ encryption and multilayer password protected applications through our clearing firm.

## NASD Public Disclosure Program

NASD Regulation's Public Disclosure Program makes available the disciplinary history of NASD members and their associated persons. You may obtain a brochure describing the Public Disclosure Program by calling the NASD Regulation Program Hotline number 800-289-9999 or by visiting the NASD Regulation's web site www.nasdr.com.

## Inter-Agency Disclosure

Securities offered through Broker Dealer Financial Services Corp. Investment products are NOT FDIC insured, or insured by any United States government agency. They are NOT deposits guaranteed, or obligations of, or guaranteed by a bank or Broker Dealer Financial Services Corp. The purchase of such investments is subject to investment risk including the possible loss of principal.



**BROKER DEALER FINANCIAL SERVICES CORP.**

Divisions:
BDF Investments
IBA Securities

Home Office Address:
8800 NW 62nd Avenue
P.O. Box 6240
Johnston, IA 50131-6240
(515) 286-2970

REV (12-06)

# Shareholder Change of Dealer Form

Date: _____

I/We hereby authorize the change of the dealer for our
PRUDENTIAL JENNISON DRYDEN
(Investment Name)

Account Number/SSN _____ Registered as

Names: _____ BETTY M _____

_____

Address: 305 N BUCHANAN

EDWARDSVILLE, IL 62025

Telephone: (618) 656-3618

To: BARRY HOSTO _____ / 4CBD / 4C
(Representative Name)              (Rep Number)    (Branch Number)

Rep SSN (Insurance Products) _____

Broker Dealer Financial Services Corp.
8800 NW 62nd Ave
P.O. Box 6240
Johnston, IA 50131-6240

Signed _____    Signed _____
(Customer 1)                       (Customer 2 if joint tenancy)

_____            _____
Print Name                         Print Name

BROKER
DEALER
FINANCIAL
SERVICES CORP.

MATERIAL
REDACTED

REV 12/04



**Barry A. Hosto**

118 N. Kansas St.
Edwardsville, IL 62025
Tel: 618.692.0661
Cell: 618.779.5608
Fax: 618.692.0063
barryh@charter.net

Securities Offered Through
Broker Dealer Financial Services Corp.
Member NASD & SIPC

**H**OSTO
**F**INANCIAL
**S**ERVICES, INC.

Hosto Financial Services
118 N. Kansas St.
Edwardsville, IL 62025

**H**OSTO
**F**INANCIAL
**S**ERVICES, INC.

118 North Kansas Street, Edwardsville, IL 62025

# EXHIBIT E



**John Rosero**
Vice President & Corporate Counsel
Law Department

**The Prudential Insurance Company of America**
213 Washington Street, 15th Floor, Newark NJ 07102
Tel 973 802-4336 Fax 973 367-8920
john.rosero@prudential.com

August 30, 2007

<u>**Via Express Mail and**</u>
<u>**Certified Mail, Return Receipt Requested**</u>

Mr. Barry A. Hosto
118 N. Kansas Street
Edwardsville, IL  62025

Re:      **Activity Since Leaving Prudential**

Dear Mr. Hosto:

      This Law Department has been consulted concerning your activity since leaving The Prudential Insurance Company of America ("Prudential" or the "Company"), including your apparent solicitation of Prudential customers, your involvement in the attempted replacement of Prudential business, and your possible continued possession, dissemination and/or use of Prudential proprietary, confidential and trade secret information, all in violation of the Prudential Statutory Agent Agreement (the "Agreement") executed by you on March 9, 2001 and applicable law.

      More specifically, we have evidence that you have been mailing letters to Prudential customers advising them of your departure from Prudential, your affiliation with Broker Dealer Financial Services, and your desire to transfer Prudential products to your new firm.  Specifically, in your letter you solicit Prudential customers to transfer their existing Pruco accounts to your new firm and you advise them to complete and sign change and account registration forms.  Furthermore, these letters give the misimpression to Prudential customers that you can continue to service their Prudential accounts by stating that "I can continue to offer all of the services that you have enjoyed in the past".  A redacted copy of one such solicitation letter you sent dated May 2007 is attached as Exhibit 1.  These letters would appear to clearly evidence that you may have taken and/or improperly obtained confidential and/or proprietary information, including personal information about customers, from Prudential's confidential and proprietary business records.  In fact, Prudential is now in receipt of complaints from two customers who have received your solicitation letters and have expressed concern over your possible possession of their confidential information.

      Such solicitation and replacement activity by you, directly or indirectly, and any continued possession or use by you of confidential and proprietary Prudential records constitutes, among other things, wrongful interference with the business and/or contractual relationships between Prudential and its customers, and is specifically prohibited by, among other things, the terms of the Agreement and applicable law.  Such activity is legally actionable and gives rise to a claim by Prudential against you for monetary damages and injunctive relief.

Mr. Barry A. Hosto
August 30, 2007
Page 2

We hereby demand that you immediately cease and desist from any such improper activity, and that no later than 10 business days from the date of this letter you provide to me the following:

- A list of all Prudential customers to whom you sent this letter.

- A list of all Prudential customers whom you have otherwise contacted.

- Written assurance that you will cease and desist from any further improper contact with Prudential customers and any solicitation, replacement or transfer of Prudential business.

In addition, you must return immediately any and all Prudential property or records to:

**Ms. Elaine Syrewicz, Operations and Controls Associate**
**Prudential**
**Greater St. Louis Agency**
**12312 Olive Blvd., Suite 300**
**St. Louis, MO  63141**

If you no longer have any such Prudential property, records or information in your possession or under your control, please carefully review the enclosed Statement Under Oath and if it is accurate, please sign and date it in the presence of a Notary Public and return it to me promptly in the enclosed self-addressed postage paid envelope.

To ensure that there is no misunderstanding on your part as to your obligations, we once again remind you of the obligations and promises you made in Section 7 of the Agreement in which you agreed:

**Section 7 – Restrictive Covenant**

Upon termination of your association with the Company, from any capacity, you agree that for a period of two years following the date of such termination, you will not, directly or indirectly, as to any product or service of the type issued, marketed or sold by the Company:
  (i) solicit from or attempt to solicit from; or
  (ii) sell to or attempt to sell to
any person, company or organization that was sold to or serviced by any agency to which you were assigned, whose name became known to you, or to whom you have sold, or for whom you were named Agent of Record, or servicing representative, on any product or service issued, marketed or sold by the Company, during the course of your association with the Company in any capacity. The activity prohibited includes, but is not limited to, attempting to induce any such person, company or organization to withdraw values from product/services in force with the Company for the purpose of entering into any non-Company transaction.

We also want to remind you of the obligations and promises you made in your Agreement in which you specifically agreed in Section 6:

Mr. Barry A. Hosto
August 30, 2007
Page 3

### Section 6 – Confidential and Proprietary Information; Company Documents; Company Property

a)  Whether original, duplicated, computerized, memorized, handwritten, or in any other form, all books, accounts, computer and/or other records, documents, vouchers, letters received, including but not limited to the names, addresses and phone numbers of any account, customer, client, customer lead or prospect, and/or all items provided by, provided to, or prepared for Prudential, and/or relating to or connected with the business of Prudential ("Confidential and Proprietary Information"), at any time during your association with the Company in any capacity, are and shall remain the sole and exclusive property of Prudential during your association with Prudential and thereafter.

b)  All Confidential and Proprietary Information, whether provided to you by Prudential or by any customer, client, customer lead or prospect or from any other source, or prepared by you while associated with the Company in any capacity, is entrusted to you as an agent and representative of Prudential.  You acknowledge that this Confidential and Proprietary Information is unique, extremely valuable to Prudential and is developed and acquired by great expenditures of time, effort and costs.  You agree that this Confidential and Proprietary Information shall be treated by you at all times as confidential and as the proprietary property of Prudential. You agree not to divulge or disclose this Confidential and Proprietary Information to any third-party, either during your association with the Company or at any time thereafter, except in the performance of your duties for the Company.

Furthermore, we would like to point out and remind you that in Section 8 of the Agreement you agreed:

### Section 8 – Violations of Sections 6 or 7

In the event of a breach of Section 6 or 7 of this Agreement, you acknowledge that damages alone will not be an adequate remedy and the Company will, in addition to damages, be entitled to injunctive or other equitable relief against you to enforce the provisions of these Sections, including but not limited to the relief set forth in section 11 below.  In addition, you agree that you will be liable for any damages, including but not limited to attorney's fees, and/or related costs, incurred in connection with enforcing the provisions of these Sections of this Agreement.

In addition, in Section 11 you agreed:

### Section 11 – Temporary Restraining Order/Injunctive Relief

You consent to the issuance of a temporary restraining order or a preliminary injunction by any court or agency with jurisdiction over you to prohibit your breach of any provision of this Agreement, or to maintain the status quo pending the outcome of any arbitration and/or litigation proceeding.

We further remind you that you are not authorized to act on Prudential's behalf in any matter and that among other things, you can not hold yourself out as being associated with Prudential and/or its

Mr. Barry A. Hosto
August 30, 2007
Page 4

affiliated companies or subsidiaries or directly or indirectly being able to service Prudential customers with respect to their Prudential products and services, use Prudential's name, logo, forms or marketing materials in your business dealings or collect any premiums or moneys on our behalf, and that your failure to abide by these prohibitions would also compel us to review appropriate legal action to protect Prudential's interests.

Prudential has been successful in stopping solicitation and replacement activity by instituting litigation. This letter is notice of our intention to protect Prudential's interests. We trust that you will immediately cease all solicitation and/or replacement activity and that you will take the action demanded in this letter written 10 business days from the date of this letter.

If you fail to respond, we will have no choice but to explore all appropriate remedies available under the law.

This demand is made without prejudice to Prudential rights, both legal and equitable, with respect to your actions to date, and all such rights are expressly preserved.

Very truly yours,

John D. Rosero
Vice President, Corporate Counsel

Enclosure
G:\cease\hosto

cc:     Debra Patterson, Managing Director, STCS Agency, Prudential
        Elaine Syrewicz, Operations & Controls Associate, Prudential
        David Dunn, Esq., Vice President and General Counsel, Broker Dealer Financial Services Corp.

## STATEMENT UNDER OATH

I, Barry A. Hosto, state as follows:

1.      I was employed by The Prudential Insurance Company of America ("Prudential") as a Prudential Representative and/or Statutory Agent.

2.      After making my best efforts to locate any and all books, records, documents (including but limited to computer records) supplies, customer, business or product information (including but not limited t confidential, proprietary and/or trade secret information) of any kind or nature whatsoever, whether furnish by Prudential or obtained or prepared by me while employed by Prudential, including all copies of all such documents, all of which are exclusively Prudential's property (collectively the "Prudential Property"), to the best of my information and belief, I no longer have in my possession, custody or control any such Prudentia Property.

3.      Pursuant to Title 28, United States Code, Section 1746, I declare, certify and state under penalty of perjury that the foregoing is true and correct.

_____
**Barry A. Hosto**

Dated: _____, 2007

Signed and sworn to before me on this

_____ day of _____, 2007.

_____
Notary Public

My commission expires:

(seal)



**HOSTO FINANCIAL SERVICES, INC.**

May 2007

Barry A. Hosto

Hosto Financial Services, Inc.
118 N Kansas Street, Edwardsville IL 6202
Tel 618 692-0061
Cell 618-779-S808
Fax 618 692-0063

Dear

As most of you know, I've recently left Prudential's Captive Division. However, because investment transactions are required to be processed through a broker/dealer, I've aligned myself with Broker Dealer Financial Services, an independent financial services company. With this new relationship, I can continue to offer all of the services that you have enjoyed in the past plus additional financial products that you may need in the future.

Although this affiliation will most likely be a seamless and transparent enhancement, I feel it is important to point out that my primary consideration in making this positive change is to continue providing you with the best service possible. All of the services that I was able to provide you with previously, will continue.

YOUR INVESTMENT HOLDINGS WILL NOT CHANGE IN THIS TRANSITION; simply our broker/dealer and clearing firm affiliations. Transfer of your existing accounts from Pruco is a *simple process.* All that is needed is that you sign the enclosed broker/dealer change forms as well as the Account Registration form. Both of these forms are highlighted in the areas that require you to enter information and sign. Once the forms are completed *in their entirety,* please return them to me in the enclosed, self-addressed, postage paid envelope. You will be receiving statements in the normal course of statement cycles from each of your current, existing investment companies.

I thank you for your continued trust and for allowing me to assist you with your financial needs. Please do not hesitate to call me if you have any questions.

Warmest Regards,

*Barry*

Barry Hosto

Securities Offered Through Broker Dealer Financial Services Corp. Member NASD & SIPC

# EXHIBIT F



John Rosero
Vice President & Corporate Counsel
Law Department

The Prudential Insurance Company of America
213 Washington Street, 15th Floor, Newark NJ 07102
Tel 973 802-4336 Fax 973 367-8920
john.rosero@prudential.com

August 30, 2007

**VIA UPS EXPRESS AND REGULAR MAIL, FIRST CLASS POSTAGE PREPAID**

David Dunn, Vice President and General Counsel
Broker Dealer Financial Services Corp.
8800 N.W. 62nd Avenue
Johnston, IA  50131

      Re:    Former Prudential Representative Barry A. Hosto

Dear Mr. Dunn:

      We understand that Barry A. Hosto, an agent formerly associated with Prudential in our Greater St. Louis Agency, is now a registered representative or otherwise associated with Broker Dealer Financial Services Corp.

      At the time of his separation from Prudential, Mr. Hosto was subject to the terms of the Prudential Statutory Agent's Agreement he signed on March 9, 2001.  In this Agreement, Mr. Hosto specifically agreed in Section 7 that:

            Upon termination of your association with the Company, from any capacity, you agree that for a period of two years following the date of such termination, you will not, directly or indirectly, as to any product or service of the type issued, marketed or sold by the Company:
            (i)  solicit from or attempt to solicit from; or
            (ii)  sell to or attempt to sell to
any person, company or organization that was sold to or serviced by any agency to which you were assigned, whose name became known to you, or to whom you have sold, or for whom you were named Agent of Record, or servicing representative, on any product or service issued, marketed or sold by the Company, during the course of your association with the Company in any capacity.  The activity prohibited includes, but is not limited to, attempting to induce any such person, company or organization to withdraw values from product/services in force with the Company for the purpose of entering into any non-Company transaction.

      On this date, I sent a cease and desist letter to Mr. Hosto.  A copy of that letter is included for your information.  As stated to Mr. Hosto in that letter, among other things, we are concerned by Mr. Hosto's ongoing solicitation of Prudential customers, his involvement in the replacement or transfer of Prudential business, and his possible continued possession, dissemination and/or use of Prudential proprietary, confidential and trade secret information, all in violation of his contract with Prudential and/or applicable law.

David Dunn, Vice President and General Counsel
Broker Dealer Financial Services Corp.
August 30, 2007
Page 2

More specifically, we have evidence that Mr. Hosto has been mailing letters to Prudential customers advising them of his affiliation with Broker Dealer Financial Services Corp. and his desire to transfer their accounts to your firm. A copy of one such letter is attached hereto. These letters provide the misimpression to Prudential customers that Mr. Hosto can continue to provide service and assistance to Prudential customers and appear to be a further device intended to facilitate contact with Prudential customers for purposes of the transfer or replacement of Prudential business. Furthermore, these letters are also reason to believe that Mr. Hosto may have taken trade secret and confidential personal information about Prudential customers from Prudential's proprietary and confidential business records, and that he potentially has disseminated this information to others associated with Broker Dealer Financial Services Corp. In fact, Prudential is in receipt of complaints from two customers concerning Mr. Hosto's activity.

In light of the binding terms and conditions of Mr. Hosto's Agreement and applicable law, we ask that Broker Dealer Financial Services Corp. promptly take all necessary and appropriate action to ensure Mr. Hosto honors his legal and contractual obligations to Prudential, including the obligation to return Prudential property and confidential and proprietary information, and that Broker Dealer Financial Services Corp. refrain from any activity that enables, encourages or permits Mr. Hosto to violate his legal obligations to Prudential or Prudential's legal rights.

As you know, FINRA's Notice to Members 07-06 provides that member firms must have procedures in place to review, monitor and supervise new representatives and their solicitation of their prior employer's customers. In addition, if he still possesses Prudential's confidential information concerning its customers, he is in violation of his contractual obligations and Prudential privacy policy. The latter also raises the issue whether your firm's registered representative is compliance with the applicable federal and state privacy laws and regulations.

We would very much appreciate Broker Dealer Financial Services Corp.'s cooperation and assistance in promptly and amicably resolving this matter. I look forward to hearing from you in that regard at your earliest opportunity.

Very truly yours,

John D. Rosero
Vice President, Corporate Counsel

JDR/db
Enclosures
G:\cease\hosto.bdfs.gc

EXHIBIT G

## STATEMENT UNDER OATH

I, Barry A. Hosto, state as follows:

1.    I was employed by The Prudential Insurance Company of America ("Prudential") as a Prudential Representative and/or Statutory Agent.

2.    After making my best efforts to locate any and all books, records, documents (including but not limited to computer records) supplies, customer, business or product information (including but not limited to confidential, proprietary and/or trade secret information) of any kind or nature whatsoever, whether furnished by Prudential or obtained or prepared by me while employed by Prudential, including all copies of all such documents, all of which are exclusively Prudential's property (collectively the "Prudential Property"), to the best of my information and belief, I no longer have in my possession, custody or control any such Prudential Property.

3.    Pursuant to Title 28, United States Code, Section 1746, I declare, certify and state under penalty of perjury that the foregoing is true and correct.

Barry A. Hosto

Dated: 8-13-2017, 2007

Signed and sworn to before me on this

13th day of Sep, 2007.

Notary Public

My commission expires:

(seal)

Official Seal
Carl Lynn Weakley
Notary Public State of Illinois
My Commission Expires 04/05/2009



Prudential

Prudential Insurance Company of America
213 Washington Street, 15th Floor

John Rosero
Law Department
Prudential Financial
213 Washington Street, 15th Floor
Newark, NJ 07102

0710242517

ST LOUIS MO 631

13 SEP 2007 PM 3 T



LAW DEPT

SEP 1 9 2007

JDR



# EXHIBIT H

 **Prudential**

John D. Rosero
Vice President & Corporate Counsel
Law Insurance Unit

**The Prudential Insurance Company of America**
213 Washington Street, Newark NJ 07102
Tel 973 802-4336  Fax 973 367-8920
john.rosero@prudential.com

April 24, 2008

<u>VIA UPS EXPRESS AND REGULAR MAIL</u>

David Dunn, Vice President and General Counsel
Broker Dealer Financial Services Corp.
8800 N.W. 62nd Avenue
Johnston, IA 50131

        Re:     Former Prudential Representative Barry A. Hosto

Dear Mr. Dunn:

We have previously corresponded regarding the solicitation and replacement activities of former Prudential representative Barry Hosto who is currently a registered representative of your firm. In your letter to me dated September 13, 2007, you indicated that Mr. Hosto was advised "to cease and desist any solicitation of his former Prudential clients." Prudential has evidence that Mr. Hosto has continued to replace Prudential business subsequent to your letter in direct contravention of his contractual obligations to Prudential. We are concerned about his continued failure to honor the terms of agreement with Prudential. In addition, his replacement activity suggests that he may have failed to return Prudential records upon his termination from our company. In light of Mr. Hosto's legal obligations to Prudential and his obligation to comply with the applicable laws and regulations, we request that your firm immediately take all necessary action to have your representative, and any other person acting in concert with him, cease and desist from any such activity that is contrary to Mr. Hosto's contractual obligations and any applicable laws or regulations.

As you may be aware, regulators have expressed concerns regarding certain activities of registered representatives after they have changed firms. NASD Notice to Members 07-06 outlines several issues related to a new representative's replacement activity involving his former firm's customers. The Notice indicates that member firms should have procedures in place to review, monitor and supervise new representatives who may solicit the customers of their prior firm. In addition, the SEC has recently commenced an enforcement action against a broker-dealer because its new registered representatives had unauthorized access to their prior firm's nonpublic and personal customer information. *See In the Matter of Next Financial Group, Inc.,* (2007 SEC Lexis 1907). In that case, the SEC has alleged, among other things, that the broker-dealer violated privacy laws and regulations for aiding and abetting its new representatives from using their prior firm's nonpublic personal information. As indicated in my prior correspondence with you and Mr. Hosto, he was obligated to return all of Prudential records, including personal customer information, upon his termination with Prudential. If he is still in possession of such information, he is in violation of his contract with Prudential and the company's privacy policy. In light of the above, we again request that Broker Dealer Financial Services Corp. conduct an inspection of Mr. Hosto's office to confirm that he does not have in his possession, custody or control Prudential customer information.

#14333v1

David Dunn, Vice President and General Counsel
Broker Dealer Financial Services Corp.
April 24, 2008
Page 2

     Courts throughout the country have recognized that Prudential and other insurance companies are entitled to injunctive relief to enforce restrictive covenants set forth in employments contracts. See e.g., *Prudential Ins. Co. of America v. Tourville*, Case No. 03-C-0135 (E.D. Wis. Mar. 10, 2003). Moreover, courts have also enjoined other third parties, including the former representative's new firm, from aiding and abetting the representative's solicitation and replacement activities. See e.g., *Prudential Ins. Co. of America v. Bates*, No. CV F 01-6227 (E.D. Cal. Oct. 12, 2001, Sept. 25, 2002); *Prudential Ins. Co. of America v. Lanzatella*, No. 98-CV-6320CIS (W.D.N.Y. Sept. 9, 1998).

     We would appreciate your firm's cooperation in promptly and amicably resolving this matter. I look forward to hearing from you regarding this matter.

                        Very truly yours,

                        John D. Rosero
                        Vice President, Corporate Counsel

G:\ccase\hosto.bdfs2.gc

# EXHIBIT I



BROKER
DEALER
FINANCIAL
SERVICES CORP.

8800 NW 62ND AVENUE
P.O. BOX 6240
JOHNSTON, IA 50131-6240

(515) 286-2970
(800) 352-5634
FAX (515) 286-2972

VIA FACSIMILE - #973-367-8920
And US Mail

May 2, 2008

John D. Rosero, Esquire
Vice President and Corporate Counsel
Law Insurance Unit
The Prudential Insurance Company of America
213 Washington Street
Newark, NJ  07102

Re:  Former Prudential Representative Barry A. Hosto

Dear Mr. Rosero:

Following receipt of your letter of April 24, 2008, we directed Mr. Hosto's OSJ Manager to conduct an unannounced inspection of his offices.  That inspection was conducted yesterday and revealed that, contrary to Mr. Hosto's representations to us, files relating to his former Prudential clients were located in his office.  Those files were removed from his office by our OSJ Manager.

During the inspection of Mr. Hosto's offices, he disclosed that some replacements of Prudential products were made to fixed products with North American Insurance Company, and not to variable products that would have been subject to our review.

The 109 Prudential records that were removed from Mr. Hosto's office have been boxed and will be shipped today to:

Ms. Elaine Syrewicz, Operations and Controls Associate
Prudential
Greater St. Louis Agency
12312 Olive Blvd., Suite 300
St. Louis, MO  63141

MEMBER SECURITIES INVESTOR PROTECTION CORPORATION

Mr. John Rosero
May 2, 2008
Page 2


No Prudential documents are in the possession of BDFS or its OSJ Manager and no record was made of the files, other than a count was maintained by us for tracking purposes.

We are also today terminating Mr. Hosto's status as a registered representative of our firm.

Please let me know if you have any questions.

Very truly yours,

David W. Dunn
Vice President Administration
General Counsel


DD:kt