IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PRUDENTIAL INSURANCE  )
COMPANY OF AMERICA, and  )
PRUCO SECURITIES, LLC,  )
                        )
        Plaintiffs,     )
                        )
vs.                     )   Case No. 08-CV-0674-MJR-CJP
                        )
BARRY HOSTO,            )
                        )
        Defendant.      )

## ORDER ISSUING TEMPORARY RESTRAINING ORDER

**REAGAN, District Judge:**

### A. Background

On September 25, 2008, Plaintiffs filed a complaint against Hosto alleging eight causes of action: breach of contract, misappropriation of trade secrets, breach of fiduciary duty, breach of the duty of loyalty, intentional interference with actual and prospective economic advantages, negligent interference with actual and prospective economic advantages, conversion, and attorney's fees (Doc. 1). Plaintiffs simultaneously filed a motion for a temporary restraining order and a preliminary injunction (Doc. 4). However, the Court was unable to determine whether subject matter jurisdiction existed and ordered further briefing on that issue (Doc. 8). In lieu of filing a memorandum, Plaintiffs filed an amended complaint further explaining the jurisdictional basis (Doc. 9).

On September 26, 2008, the Court construed the motion for a temporary restraining order (Doc. 4) as pertaining to the newly filed amended complaint, and set a hearing for 10:00 a.m. on October 2, 2008 (Doc. 11). On September 29, 2008, Plaintiffs' counsel called Hosto in order to

-1-

give him notice of the hearing and sent a copy of the pleadings via overnight delivery (Doc. 12). The Court later rescheduled the hearing for 9:30 a.m. on October 2, 2008 (Doc. 13) and Hosto was again given notice.

On October 2, 2008, the parties appeared before this Court, with Hosto appearing pro se. The Court received argument regarding the factual support for Plaintiffs' motion, and Hosto gave testimony and minimal argument.

The argument and testimony at the hearing, along with the pleadings provide the following factual background. Plaintiffs allege that Hosto was employed by Prudential from January 1991 through April 2, 2007. In 2003, Prudential sold a portion of its auto and homeowners' insurance businesses to Liberty Mutual Insurance Group. In connection with that sale, Plaintiffs inform the Court that Prudential Insurance Brokerage, Inc. was appointed as the exclusive agent for Liberty Mutual and its affiliates to service the insurance products involved in that transaction. The parties also agreed that Prudential would safeguard confidential information related to those products and pursue legal remedies against former Prudential agents who solicited or caused policyholders to turn to a competitor in violation of the agents' contracts.

In connection with Hosto's employment, he signed two agreements at issue in this case: the Statutory Agent Agreement took effect on March 9, 2001 (Doc. 9-2, Exh. B) and the Liberty Authorized Agent Agreement took effect on October 31, 2003 (Doc. 9-2, Exh. C). These agreements include provisions stating that any client information Hosto obtained in the course of his association with Prudential was proprietary and confidential. According to Plaintiffs, the agreements also provide that Hosto could only use such information in connection with his activities as a Prudential agent, and that any such documents must be returned to Prudential upon his

termination. Plaintiffs also claim that Hosto agreed not to solicit, directly or indirectly, Prudential customers that he serviced or whose names he knew because of his Prudential affiliation for two years following his termination.

Hosto resigned on or about April 2, 2007. However, Prudential soon learned that a large number of its customers whom Hosto serviced had cancelled their Prudential policies and obtained competitor policies with Hosto as their agent. In response, Prudential sent a demand letter on August 20, 2007 ordering Hosto to cease and desist with such actions (Doc. 9-2, Exh. E). On September 13, 2007, Hosto executed an affidavit swearing that he no longer possessed or controlled any Prudential property (Doc. 9-2, Exh. G).

Nonetheless, Prudential alleges that it continued to receive complaints from customers that Hosto was soliciting them and/or divulging their confidential information without authorization. Thus, on April 24, 2008, Prudential contacted Hosto's employer, Broker Dealer Financial, and provided evidence that Hosto continued to retain confidential documents and contact former clients (Doc. 9-2, Exh. H). On May 2, 2008, Broker Dealer responded and informed Prudential that it performed an unannounced inspection of Hosto's office, during which it removed 109 Prudential files (Doc. 9-2, Exh. I). Broker Dealer returned these files to Prudential. Despite all of this, Prudential claims that it still receives complaints from customers (as recently as last week) that Hosto solicited them in an attempt to transfer their Prudential policies to competitors (*see* Doc. 14).

As a result, Prudential now moves for a temporary restraining order to stop Hosto's further solicitation of Prudential clients and to order Hosto to return any Prudential documents in

his possession (Doc. 4).[1]

For reasons thoroughly explained herein, the Court now **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for a temporary restraining order (Doc. 4) under the terms and conditions explained below.

### B. Analysis

It should be noted at the outset that Plaintiffs refer to their motion as one for a temporary restraining order. Generally, under **FEDERAL RULE OF CIVIL PROCEDURE 65**, a temporary restraining order is only issued when notice is not given to the defendant. Where notice is given, the proper relief is typically a preliminary injunction. However, the Court issues a temporary restraining order (TRO) here, rather than a preliminary injunction, in light of the circumstances. Primarily, the Court notes that Plaintiffs only ask for temporary relief of a limited duration. Additionally, Hosto appeared pro se, explained that he has no experience with such legal matters, and that he intends to retain counsel in the coming days.

**FEDERAL RULE OF CIVIL PROCEDURE 65** authorizes the issuance of preliminary injunctions and temporary restraining orders. Temporary injunctive relief is an extraordinary remedy that is only granted where there is a clear showing of need. ***Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted**

---

[1] Prudential explains that it either has or will contemporaneously commence an arbitration proceeding against Hosto before FINRA Dispute Resolution, as is apparently required by Prudential's license with the National Association of Securities Dealers. However, any such arbitration does not appear to conflict with the above-captioned action, as **FINRA Rule 13804** provides that parties may seek temporary injunctive relief from a court of competent jurisdiction until an arbitration panel can be assembled (Doc. 9-2, Exh. A). Thus, the Court is not precluded from proceeding despite the possibility of a contemporaneous arbitration.

**unless the movant, by a clear showing, carries the burden of persuasion.")).** District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g., Charter Nat'l Bank and Trust v. Charter One Financial, Inc.*, **2001 WL 527404 (N.D. Ill. May 15, 2001) (unreported).** In order to obtain a TRO, the movant must make an initial showing that (1) its case has a likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) they will suffer irreparable harm if injunctive relief is not granted. *See, e.g.*, *Hodgkins ex rel. Hodgkins v. Peterson*, **355 F.3d 1048, 1054-55 (7th Cir. 2004).** If the movant makes this threshold showing, then the Court considers two additional criteria: (4) whether the balance of harm to the plaintiff if the TRO is wrongly denied outweighs the harm to the defendant if the TRO is wrongly granted, and (5) the public interest. *Cooper*, **196 F.3d at 813 (1999).**

### 1. Likelihood of Success

The threshold for showing that the movants have a likelihood of success on the merits is low, and Plaintiffs "need only demonstrate a 'better than negligible chance of succeeding." *Cooper*, **196 F.3d at 813.** Here, Plaintiffs have shown a likelihood of success on their claims. The facts presented to the Court and the accompanying exhibits indicate that Hosto may have breached the agreements in question by retaining Prudential's documents, which are identified in the agreement as proprietary and confidential. Additionally, it appears that Hosto may have solicited clients he serviced while working for Prudential and continues to do so. Thus, Plaintiffs sufficiently support their allegations that Hosto violated those portions of the contracts that prohibited him from soliciting customers and retaining confidential information.

The Seventh Circuit has noted that "a contract forbidding disclosure of customer

information is enforceable—but only if the contractual prohibition is reasonable in time and scope and, specifically, only if its duration is limited." ***Am. Family Mut. Ins. Co. v. Roth*, 485 F.3d 930, 933 (7th Cir. 2007).** The restrictive covenants in the contracts at issue here (Doc. 9-2, Exhs. B &C) prohibited the solicitation of clients whom Hosto knew of as a result of his employment at Prudential for a period of two years. This agreement appears sufficiently limited in scope and duration, and Hosto has not argued that the provisions are unreasonable.

Additionally, there is a likelihood of success on the merits with respect to Plaintiffs' misappropriation of trade secrets claim. As this district court is sitting in diversity, the substantive law of the state of Illinois applies to this claim. ***See River East Plaza, LLC v. Variable Annuity Life Ins. Co.*, 498 F.3d 718, 720 (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).** The Illinois Trade Secrets Act defines a trade secret as

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

**765 ILCS 1065/2(d).** The client lists and insurance documents at issue in this case do in fact appear to constitute trade secrets under Illinois law, as Prudential has stated that a significant investment of time and money goes into creating these confidential materials. At any rate, Hosto has not argued that the documents at issue do not constitute trade secrets.

Having found accordingly, the Court need not conduct this analysis for each and

every claim presented by the Plaintiffs. Simply stated, the facts indicate that Plaintiffs have a "better than negligible chance" of proving their claims.

### 2. Irreparable Harm / No Adequate Remedy At Law

Plaintiffs also make an adequate showing of irreparable harm and the lack of an adequate remedy at law here. Though injunctive relief is not ordinarily granted in breach of contract claims, *see Chicago United Industries, Ltd. v. City of Chicago*, **445 F.3d 940, 945 (7th Cir. 2006)**, courts have typically been willing to issue temporary injunctions where customer lists and trade secrets are involved. *See, e.g., Am. Family Mut. Ins. Co. v. Roth*, **485 F.3d 930 (7th Cir. 2007).**

Moreover, Plaintiffs have shown that there is no adequate remedy at law as to their other claims as well, including misappropriation of trade secrets, for the following reasons. If restricted to a suit for damages, Plaintiffs will lose trade secrets in the form of their confidential and proprietary documents, which include customer lists. An unquantifiable portion of the substantial expense invested in developing these confidential materials will therefore be lost. Moreover, Plaintiffs may lose an unidentifiable number of clients if Hosto continues to solicit these customers unless an injunction is entered. Therefore, damages are inadequate and Plaintiffs have made a sufficient showing of irreparable harm. A TRO is the only way that the parties can maintain the status quo while resolving their claims in arbitration.

### 3. Balance of the Equities and the Public Interest

Finally, the balance of the equities and the public interest both weigh in favor of granting the TRO. If the TRO is wrongly denied, Plaintiffs may continue to lose many of its clients as a result of Hosto's alleged conduct. Moreover, Hosto could continue to wrongfully use confidential information obtained from Prudential to solicit individuals in further violation of

Prudential's rights.  Conversely, the harm to Hosto from a wrongly granted injunction is minimal. The issuance of a TRO would not prevent Hosto from soliciting business from the public generally. It would merely restrict him from soliciting those clients he learned about while working at Prudential or from confidential Prudential documents.

The public interest also weighs in favor of granting the TRO.  Hosto is allegedly using personal information to solicit Prudential's clients, who have an expectation that the information will remain only in the hands of Prudential.  Thus, there is a risk of harm to the public if an injunction is not issued at this time.

### 4. Security Requirement

**FEDERAL RULE OF CIVIL PROCEDURE 65(c)** provides:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

The express terms of Rule 65(c) provide that security is mandatory, and the Seventh Circuit has generally required that security be given.  *See Minnesota Power & Light Co. v. Hockett*, 14 Fed.Appx. 703, 707 (7th Cir. 2001) ("Posting such a security . . . is the cost of doing business in federal court."); *Cronin v. U.S. Dep't of Agriculture*, 919 F.2d 439, 445 (7th Cir. 1990) (explaining that Rule 65(c) "makes such security mandatory, although a number of environmental decisions . . . waive the requirement or allowing the posting of a nominal bond.").

Plaintiffs argue that given the short duration of the TRO, any security ordered by this Court should not exceed $10,000.  Hosto did not object to this suggestion and offered no alternative. Accordingly, the Court requires Prudential to provide security in the amount of $10,000.

### 5. Overbroad Portions of Plaintiffs' Proposed TRO

Plaintiffs' request for the TRO is overbroad to some extent, however, because they seek an Order requiring Hosto to turn over all documents currently in his possession and to prevent him from soliciting clients through April 3, 2009. This relief would give Plaintiffs everything they request, and would therefore be tantamount to a permanent injunction. Consequently, the Court grants the motion for TRO only insofar as provided below.

### C. The Terms of the TRO

Having fully considered the parties' allegations, pleadings, and testimony, the Court **ORDERS** as follows:

(1) A temporary restraining order is issued immediately. Prudential shall post security in the amount of **$10,000 no later than 5:00 p.m. on October 6, 2008.**

(2) Hosto, and anyone working with or for him, and any entity with which he is currently affiliated, is enjoined and restrained, directly or indirectly, and whether alone or in concert with others, from:

> (a) using, disclosing or transmitting for any purpose any confidential or proprietary information belonging to Prudential and/or any affiliate of Prudential, or concerning the customers, employees, and associated persons of Prudential and/or any affiliate of Prudential, including but not limited to the names, addresses, and telephone numbers of customers, employees, and associated persons of Prudential and/or any affiliate of Prudential, and the financial information of customers of Prudential and/or any affiliate of Prudential;
>
> (b) destroying any of the records or information Hosto removed from Prudential;
>
> (c) soliciting, directly or indirectly, or selling to or attempt to sell to any person, company, or organization assigned to Hosto or Hosto sold to, serviced or whose name became known to Hosto or for whom

Hosto was named Agent of Record or servicing representative, on any product or service issued, marketed, or sold by Prudential in any capacity, including, but not limited to, attempting to induce any such person, company, or organization to withdraw values from product/services in force with Prudential for the purpose of entering into any non-Prudential transaction;

(d) inducing or attempting to induce any person associated with, or under contract with Prudential, to terminate or otherwise facilitate the termination, by any such person of, his/her relationship with Prudential or induce or attempt to induce any such person to sell or solicit products or services on behalf of any other company which are of the same or similar type of those issued, marketed, or sold by Prudential and otherwise facilitate such conduct.

(3) The parties are granted leave to commence expedited discovery immediately in aid of preliminary injunction proceedings before this Court.

(4) This Order shall remain in full force and effect until **10:00 a.m. on October 14, 2008**, but may be extended upon proper motion and for good cause shown, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65.**

(5) The parties shall appear before the undersigned District Judge at **10:00 a.m. on October 14, 2008** for a hearing on Platinffs' request for a preliminary injunction.

### D. Conclusion

Accordingly, as explained above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for a temporary restraining order (Doc. 4).

**IT IS SO ORDERED.**

**DATED this 2d day of October 2008, at 2:55 p.m.**

                                              **s/ Michael J. Reagan**
                                              **MICHAEL J. REAGAN**
                                              **United States District Judge**